**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-2167**

AGUSTIN PANTOJA-MEDRANO, a/k/a Agustin Pantoja, a/k/a
Agustin Pantoja Medrano, a/k/a Augustin Pantoja Medrano,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration
Appeals.

Argued: March 19, 2013                    Decided: April 5, 2013

Before MOTZ, KING, and AGEE, Circuit Judges.

Petition for review denied by unpublished per curiam opinion.

**ARGUED:** Parker Joseph Clote, JOHNSON & ASSOCIATES, PC,
Arlington, Virginia, for Petitioner. Holly Smith, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON
BRIEF:** Randall L. Johnson, JOHNSON & ASSOCIATES, PC, Arlington,
Virginia, for Petitioner. Stuart Delery, Acting Assistant
Attorney General, Civil Division, Blair T. O'Connor, Assistant
Director, Edward C. Durant, Trial Attorney, Office of
Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Agustin Pantoja-Medrano, a citizen of Mexico, petitions for review of a final order of removal entered by the Board of Immigration Appeals (BIA). The Immigration Judge (IJ) found that Pantoja-Medrano established a likelihood of persecution on account of his membership in a particular social group consisting of imputed government informants and granted him withholding of removal. The BIA vacated, concluding that Pantoja-Medrano's proposed group failed to qualify as a particular social group within the meaning of the Immigration and Nationality Act. For the reasons that follow, we deny Pantoja-Medrano's petition for review.

I.

Pantoja-Medrano, born in Mexico, entered the United States in 2001 as a lawful permanent resident. In March 2006, he was convicted of possession of cocaine and sentenced to five years with his sentence suspended. In December 2010, the Department of Homeland Security issued Pantoja-Medrano a notice to appear, alleging he was removable pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) because of his conviction of a controlled substance offense after admission to the United States.

Pantoja-Medrano conceded removability but applied for asylum or withholding of removal, claiming he feared returning

2

to Mexico because of threats on his life from drug traffickers who blamed him for their arrest and removal from the United States. The IJ credited Pantoja-Medrano's testimony as to the following facts.

In 2006, Pantoja-Medrano briefly lived in a house with three individuals with whom he worked at the time: Roberto Estrada, Fernando Romero, and Jesus Garcia. While Pantoja-Medrano was living in the house, federal authorities executed a search in response to suspected drug activity. They took custody of all of the house's occupants except Pantoja-Medrano.

About four months later, Pantoja-Medrano visited Estrada in prison at Estrada's request. Estrada told Pantoja-Medrano he believed Pantoja-Medrano was responsible for the raid. After being deported to Mexico, Estrada called Pantoja-Medrano and threatened to kill him, and has repeatedly contacted Pantoja-Medrano's sister saying he plans to kill Pantoja-Medrano. Pantoja-Medrano also heard that Romero had re-entered the United States and wanted to kill him.

The IJ found that Pantoja-Medrano established his membership in a particular social group consisting of "individuals who had the characteristics imputed to them of being an informant informing against individuals who had the strong likelihood of being involved in the drug trade and drug trafficking out of Mexico in the United States." Further, the

3

IJ found it more likely than not that Pantoja-Medrano would be subject to persecution based on his membership in that group should he return to Mexico. The IJ denied Pantoja-Medrano's request for asylum as a matter of discretion based on the gravity of his drug offense but granted his request for withholding of removal.

The Government appealed the IJ's decision to the BIA, arguing that Pantoja-Medrano did not show he was a member of a particular social group.[*] The BIA sustained the Government's appeal and ordered Pantoja-Medrano removed.

## II.

To qualify for withholding of removal, an applicant must show it is more likely than not that his "life or freedom would be threatened" in the proposed country of removal on account of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A), 8 C.F.R. § 208.16(b). We must uphold the BIA's conclusion that Pantoja-Medrano is ineligible for withholding of removal unless it is "manifestly contrary to law." 8 U.S.C. § 1252(b)(4)(C). In making this determination, we review the BIA's legal

---

[*] The Government also challenged the IJ's decision on other grounds, but the BIA did not address those arguments and we need not do so.

4

conclusions de novo and its factual findings under the substantial evidence standard, treating them as conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." Marynenka v. Holder, 592 F.3d 594, 600 (4th Cir. 2010) (internal quotation marks omitted); see 8 U.S.C. § 1252(b)(4)(B).

The only issue on appeal is whether Pantoja-Medrano's proposed group qualifies as a "particular social group" within the meaning of the Immigration and Nationality Act (INA). The INA does not define "particular social group," but we have found that the BIA's interpretation "is entitled to [Chevron] deference and must be accepted if reasonable." Hui Zheng v. Holder, 562 F.3d 647, 651 (4th Cir. 2009) (internal quotation marks omitted) (citing Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837 (1984)); see Lizama v. Holder, 629 F.3d 440, 446-47 (4th Cir. 2011).

The BIA defines persecution on account of membership in a particular social group as "persecution that is directed toward an individual who is a member of a group of persons all of whom share a common, immutable characteristic [,] . . . one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." Matter of Acosta, 19 I. & N. Dec. 211, 233 (BIA 1985), overruled on other grounds by Matter of

5

Mogharrabi, 19 I. & N. Dec. 439 (BIA 1987). Further, the BIA requires that a particular social group be socially visible, and that it be "defined with sufficient particularity to delimit its membership." Lizama, 629 F.3d at 447 (citing Matter of E-A-G-, 24 I. & N. Dec. 591, 594 (BIA 2008); In re A-M-E & J-G-U, 24 I. & N. Dec. 69, 74-76 (BIA 2007); Matter of Acosta, 19 I. & N. Dec. at 233).

This court has adopted both the immutability and particularity requirements. See, e.g., Crespin-Valladares v. Holder, 632 F.3d 117, 124 (4th Cir. 2011) (noting our acceptance of the immutability criterion); Zelaya v. Holder, 668 F.3d 159, 166-67 (4th Cir. 2012) (rejecting proposed group as lacking particularity). But we have not yet had occasion to determine whether the social visibility requirement comports with the INA. See, e.g., Zelaya, 668 F.3d at 165 n.4. Our sister circuits have divided on the question. Compare Orellana-Monson v. Holder, 685 F.3d 511, 521 (5th Cir. 2012) (adopting social visibility requirement); Scatambuli v. Holder, 558 F.3d 53, 59-60 (1st Cir. 2009) (same), with Valdiviezo-Galdamez v. Att'y Gen. of the U.S., 663 F.3d 582, 603-607 (3d Cir. 2011) (refusing to adopt social visibility requirement); Gatimi v. Holder, 578 F.3d 611, 615-16 (7th Cir. 2009) (same).

Once again, we find it unnecessary to address the validity of the social visibility criterion. Because Pantoja-Medrano's

6

proposed group lacks particularity, he cannot show he is a member of a particular social group regardless of whether we require social visibility.

Particularity requires that a proposed social group have "particular and well-defined boundaries." Zelaya, 668 F.3d at 166. Thus, we have rejected proposed groups sharing only broad or amorphous characteristics that fail to "provide an adequate benchmark for determining group membership." Lizama, 629 F.3d at 447 (internal quotation marks omitted) (finding that wealth, Americanization, and opposition to gangs were amorphous characteristics that failed to provide a benchmark for determining membership in proposed group); see also Matter of S-E-G-, 24 I. & N. Dec. 579, 585 (BIA 2008) (rejecting proposed group of "male children who lack stable families and meaningful adult protection, who are from middle and low income classes, who live in the territories controlled by the MS-13 gang, and who refuse recruitment" because "people's ideas of what those terms mean can vary" (internal quotation marks omitted)).

Our recent decision in Zelaya is especially relevant. There we held that a proposed group consisting of "young Honduran males who refuse to join MS-13, have notified the authorities of MS-13's harassment tactics, and have an identifiable tormentor within MS-13" failed to satisfy the particularity requirement. Zelaya, 668 F.3d at 165-67. We

7

explained that opposition to gangs and resistance to gang recruitment were amorphous characteristics, and "the fact that Zelaya's conduct in resisting recruitment included complaining twice to the police add[ed] little to the particularity equation in the face of the common sense proposition that MS-13 would look unfavorably upon anyone who complained about its harassment tactics to the police." Id. at 166.

If anything, the proposed social group in Zelaya was more particularized than that at issue here, as it consisted of actual informants who shared several additional characteristics. The members of Pantoja-Medrano's proposed group are alike only in that someone suspects each of them of having informed against drug traffickers. We simply cannot find that this group has "particular and well-defined boundaries such that it constitutes a discrete class of persons." Crespin-Valladares, 632 F.3d at 125 (internal quotation marks omitted). Thus, the BIA's conclusion that Pantoja-Medrano failed to establish membership in a particular social group was not "manifestly contrary to law." 8 U.S.C. § 1252(b)(4)(C).

III.

For the foregoing reasons, Pantoja-Medrano's petition for review is

DENIED.