PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CARLOS LIZAMA, a/k/a Lizama
Meija, a/k/a Carlos Alberto, a/k/a
Edgar Ortez, a/k/a Adiel Edgar,

*Petitioner,*

v.

No. 09-2027

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

On Petition for Review of an Order of
the Board of Immigration Appeals.

Argued: October 26, 2010

Decided: January 19, 2011

Before DUNCAN, AGEE, and DAVIS, Circuit Judges.

Petition for review dismissed in part and denied in part by
published opinion. Judge Duncan wrote the opinion, in which
Judge Agee and Judge Davis joined.

## COUNSEL

**ARGUED:** Ricky Malik, LAW OFFICES OF RICKY
MALIK, LLC, Merrifield, Virginia, for Petitioner. Jesse Mat-
thew Bless, UNITED STATES DEPARTMENT OF JUS-

TICE, Washington, D.C., for Respondent. **ON BRIEF:** Tony West, Assistant Attorney General, Civil Division, Jennifer Paisner-Williams, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

DUNCAN, Circuit Judge:

Carlos Lizama, a native and citizen of El Salvador, petitions for judicial review of an order of the Board of Immigration Appeals ("BIA") denying his application for asylum, withholding of removal, and protection under Article III of the United Nations Convention Against Torture ("CAT"). Lizama claims that he fears violent persecution by gangs in El Salvador on account of his membership in the self-described social group of "young, Americanized, well-off, Salvadoran male deportees with criminal histories who oppose gangs," and that the Salvadoran government would be unwilling or unable to prevent such violence. For the reasons explained below, we dismiss Lizama's asylum claim for lack of jurisdiction and deny the petition for review of his withholding of removal and CAT claims.

I.

Carlos Lizama left El Salvador on February 24, 1992, and entered the United States soon thereafter. On June 7, 2006, the Department of Homeland Security issued Lizama a Notice to Appear, charging him with removability for entering this country without inspection.

On July 24, 2008, Lizama testified at a merits hearing before an immigration judge ("IJ"). He conceded removability but petitioned for asylum, withholding of removal, and pro-

tection under the CAT. Lizama recognized that asylum claims must generally be brought within one year of the petitioner's entry into the United States. He argued, however, that because his asylum claim was based in part on the wealth he accumulated in this country between 2006 and 2007, he was not eligible to bring that claim until 2007. He claimed that the recent acquisition of his wealth constituted "changed circumstances" which excused his failure to file a timely asylum application.

Lizama's asylum and withholding of removal claims were based on his fear of persecution on account of his membership in the purported social group of "young, Americanized[,] well-off[,] Salvadoran male deportees with criminal histories who oppose gangs." J.A. 513. He explained that he would be easily recognizable by Salvadorans as a member of this group due to his dress, accent, demeanor, and standard of living. Lizama based his CAT claim on the assertion that it is more likely than not that gang members would torture him with the awareness—or willful blindness—of government officials.

In support of his claims, Lizama testified that he owned and managed a successful painting business in Northern Virginia, which accounted for his recently accumulated wealth and allowed him to regularly send between $150 and $200 a month to his mother in El Salvador. Lizama also stated that he gave his mother $30,000 to rebuild her home in her farming village of San Moritas. According to Lizama, his mother's home is now one of the nicest in her community, and villagers in San Moritas are aware she receives money from a relative in the United States. Lizama claimed that, if removed to El Salvador, he would live with his mother, though he conceded that he could live elsewhere.

Lizama also testified that he was afraid to return to El Salvador for fear of being persecuted by gangs. As a deportee, Lizama testified, he would be targeted by gang members curious to know if he was affiliated with a gang, especially a rival gang. He claimed his resistance to gang recruitment would

inspire manipulation, extortion, and even death threats from gang members. Lizama testified that his fear of extortion was based primarily on what he had seen on television. He did not claim his mother had ever been harassed or harmed by gangs in El Salvador. Moreover, although he testified that he personally knew eight individuals with criminal records who were deported to El Salvador, he did not assert that any of them had encountered the problems he fears.

In support of his claims, Lizama proffered the expert testimony of Dr. Harry Edwin Vanden, a country expert on El Salvador and Salvadoran gangs. Dr. Vanden testified that gangs such as MS-13 and Mara 18 have a "pervasive" presence in El Salvador and "operate, simply put, all over the country." J.A. 101. According to Dr. Vanden, Lizama could be identified and targeted by gangs as different from others in El Salvador because of his clothing, manner of acting, and altered accent when speaking Spanish. In addition, gangs would be interested in Lizama's financial situation as well as his criminal record—they would want to know how Lizama made his money in the United States and whether he was affiliated with any gang. In short, Dr. Vanden testified, gangs in El Salvador would target Lizama as a "person of interest" because of his age, muscular and tough appearance, criminal record, and financial situation. J.A. 107-09.

Dr. Vanden believed it was "very doubtful" the government of El Salvador would protect Lizama from gangs because the police are not always present in San Moritas, where Lizama might live. J.A. 401-02. He conceded, however, that most middle- and upper-class individuals live in walled-off neighborhoods and that Lizama could find full protection from the widespread violence by living in such a community.

Lizama submitted as additional evidence the State Department's 2007 "Issue Paper" entitled *Youth Gang Organizations in El Salvador*, which recognized criminal gang organizations as a "serious and pervasive socio-economic challenge to the

security, stability and welfare of El Salvador." J.A. 384. The Issue Paper also stated, however, that the "Salvadoran government's strong-hand law enforcement policy may be having a noticeable effect on gang behavior, and at least in the short term, in controlling gang violence." *Id.* at 392.

The IJ found Lizama credible, but denied him relief. First, the IJ deemed Lizama's asylum application untimely because it was filed more than one year after he entered the United States. The IJ rejected Lizama's argument that his relatively recent accumulation of wealth established "changed circumstances" that would justify an exception to the one-year filing period. With respect to withholding of removal, the IJ concluded that being a "young, Americanized, well-off Salvadoran male deportee with a criminal history who opposes gangs" did not qualify Lizama for membership in a social group possessing the common, immutable characteristics and recognized level of visibility and particularity required by BIA precedent. Even if Lizama could show he was a member of a protected social group, the IJ went on to conclude that he could not show a likelihood that he would be persecuted on that basis if returned to El Salvador. Finally, the IJ denied Lizama protection under the CAT based on evidence that Lizama could avoid danger by living in a middle-class area, and could not prove the government of El Salvador would acquiesce in his torture.

Lizama appealed the decision to the BIA, which affirmed the IJ's determinations. It agreed that Lizama was statutorily ineligible for asylum due to the untimely filing of his application, rejecting Lizama's argument that the changed circumstances of recently accumulated wealth excused the delay. In addition, the BIA found that Lizama had failed to establish that he belonged to a legally cognizable social group for purposes of withholding of removal. Finally, the BIA upheld the IJ's denial of relief under the CAT. Finding Lizama ineligible for relief, the BIA ordered him removed. This timely petition for judicial review followed.

## II.

On appeal, Lizama raises three arguments. First, he asserts that the BIA erred in holding his asylum application to be untimely. Lizama specifically contends that the IJ erroneously interchanged the proper standard of "changed circumstances" with that of "exceptional circumstances." Second, Lizama argues that the BIA erred by ruling that he failed to establish membership in a legally cognizable social group as the basis for his withholding of removal claim. According to Lizama, it incorrectly analyzed his purported social group, focusing on each of the group's characteristics individually instead of considering them "in totality." Lizama lastly argues that, contrary to the BIA's findings, the evidence in the record is sufficient to support his claim for protection under the CAT. We review each contention in turn.

In so doing, we must uphold the BIA's determinations unless "manifestly contrary to the law and an abuse of discretion" and must "treat findings of fact as conclusive unless the evidence before the BIA was such that any reasonable adjudicator would have been *compelled* to conclude to the contrary." *Mirisawo v. Holder*, 599 F.3d 391, 397 (4th Cir. 2010) (citations and quotations omitted); *see also* 8 U.S.C. § 1252(b)(4)(B), (D).

## A.

We first turn to Lizama's challenge to the denial of his asylum application. An alien must file an application for asylum within one year of arriving in the United States. *See* 8 U.S.C. § 1158(a)(2)(B); 8 C.F.R. § 1208.4(a)(2)(ii). Asylum applications may be considered beyond the one-year deadline, however, if an applicant demonstrates (1) "changed circumstances which materially affect the applicant's eligibility for asylum," or (2) "extraordinary circumstances relating to the delay in filing an application within the period specified." 8 U.S.C. § 1158(a)(2)(D). "Changed circumstances" may include

"[c]hanges in conditions in the applicant's country of nationality" or "[c]hanges in the applicant's circumstances that materially affect the applicant's eligibility for asylum, including . . . activities the applicant becomes involved in outside the country of feared persecution that place the applicant at risk." 8 C.F.R. § 1208.4(a)(4)(i). "Extraordinary circumstances" refers to "events or factors directly related to the failure to meet the 1-year deadline." *Id.* § 1208.4(a)(5). An applicant attempting to demonstrate the existence of changed or extraordinary circumstances must also demonstrate that he filed the application "within a reasonable period," given those circumstances. *See id.* §§ 1208.4(a)(4), (5).

Lizama contends that even though he did not file his application for asylum within one year of the date of his arrival in the United States, as required by § 1158(a)(2)(B), he is eligible for the changed circumstances exception. Specifically, he argues that, because his asylum application is based in part on his wealth, he only became eligible to file the application after he acquired that wealth between 2006 and 2007. The BIA upheld the IJ's determination that Lizama was statutorily ineligible for asylum. It reasoned that, even assuming Lizama's accumulation of wealth[1] in this country constituted "changed circumstances" that would excuse his late filing, he failed to file his asylum application within a reasonable period after acquiring that wealth.

As a general rule, this court lacks jurisdiction to review the BIA's decision regarding the timeliness of a petitioner's application for asylum. *See* 8 U.S.C. §§ 1158(a)(2), (3) (providing that "[n]o court shall have jurisdiction to review any determination" on whether the alien filed his application within a year of entry or whether "changed circumstances"

---

[1] At oral argument, Petitioner conceded he could cite no authority for the proposition that accumulation of wealth constitutes "changed circumstances" for purposes of 8 U.S.C. § 1158(a)(2)(D). Nor are we aware of any.

exist "which materially affect the applicant's eligibility for asylum"). Congress's passage of the REAL ID Act of 2005,**²** however, created an exception to this jurisdictional bar, preserving constitutional claims and "questions of law" for appellate review. *See id.* § 1252(a)(2)(D).

Lizama asserts, without elaboration, that in confusing the legal standard of "changed circumstances" and "exceptional circumstances," the IJ committed "plain error" which is subject to our review. Although the precise thrust of this argument is unclear, it is significant that Lizama does not characterize the mistake as raising a "question of law" for jurisdictional purposes. In any event, it is clear from the record that the IJ's substitution of the term "exceptional circumstances" for "changed circumstances" was inadvertent and not a legal determination affecting the substance of this analysis.

In applying § 1158(a)(2)(D), the IJ correctly noted at the outset that the one-year deadline may be overlooked "only if [Lizama] demonstrates . . . clearly changed circumstances affecting eligibility for asylum or extraordinary circumstances directly relat[ed] to the delay in filing." J.A. 403. This statement demonstrates the IJ's recognition of the distinction between changed and exceptional circumstances and the situations in which each applies. In addition, the IJ properly understood Lizama's argument to be that he "has worked in the United States since his arrival in the United States and has made more income in the last few years" and "that that constitutes changed circumstances." J.A. 405.

Although the IJ mistakenly referred to "exceptional" instead of "changed" circumstances on three occasions, he nevertheless proceeded to explain why the recent "accumulation of wealth" failed to affect Lizama's eligibility for asylum,

---

**²** Pub. L. No. 109-13, § 106, 119 Stat. 302, 316 (codified at 8 U.S.C. § 1252).

thereby appropriately applying the changed circumstances standard. *See* J.A. 406 ("[T]he respondent has not established the point at which the respondent's wealth would change such that he could not return to El Salvador and that he would apply for asylum within a reasonable period of time from that point."). And the IJ ultimately concluded that he did "not believe that respondent has established changed circumstances as required." J.A. 405.

In any event, the BIA decision refers only to "changed circumstances" and provides a reasoned explanation for why Lizama's untimely filing is inexcusable:

> Although the respondent argues that he was not aware that he would be at risk in El Salvador until he had a "sudden increase in wealth" in 2007, the Immigration Judge found that, for many years prior to 2007, the respondent made significantly more income in the United States than an average resident of El Salvador (I.J. at 11; Tr. at 72-73). *See* Respondent's Brief at 7. In fact, the respondent testified that he worked since his arrival in the United States and made over $100,000 in 2006 (Tr. at 71-72). *See* Exh. 3, Tab F. Thus, given the evidence presented, it was not clearly erroneous for the Immigration Judge to find that, assuming that the respondent's acquisition of wealth constituted "changed circumstances" under the Act, the respondent did not meet his burden of showing that he filed his asylum application within a reasonable period of time after he acquired this wealth (I.J. at 11).

J.A. 513-14.

Since the IJ's misstatement was simply a labeling error and not an issue affecting his or the BIA's legal analysis, Lizama's argument regarding the misstatement fails to raise a question of law vesting us with jurisdiction to review the

denial of his asylum application. Accordingly, we dismiss Lizama's asylum petition.

## B.

We next turn to Lizama's argument that he is entitled to withholding of removal.[3] Withholding of removal is available under 8 U.S.C. § 1231(b)(3) to an alien who shows clear probability of persecution in the proposed country of removal because of his "race, religion, nationality, membership in a particular social group, or political opinion." *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b)(2). To establish clear probability, the alien must prove "it is more likely than not that [his] life or freedom would be threatened in the country of removal." *Gomis v. Holder*, 571 F.3d 353, 359 (4th Cir. 2009). The applicant bears the burden of demonstrating a "clear probability" of persecution based on one of the five protected grounds enumerated above. *Niang v. Gonzales*, 492 F.3d 505, 510 (4th Cir. 2007).

Lizama's claim of persecution is based on membership in a particular social group consisting of "young, Americanized, well-off Salvadoran male deportees with criminal histories who oppose gangs." Neither the relevant statute nor its associated regulations specifically define the term "particular social group." We therefore defer to the BIA's reasonable interpretation of the term. *Hui Zheng v. Holder*, 562 F.3d 647, 654 (4th Cir. 2009) (explaining that under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), we afford the BIA the "deference that must be given to agency interpretations of their

---

[3] Normally an applicant who fails on his asylum claim will necessarily fail on his withholding of removal claim, since relief in the form of withholding of removal (which is also based on persecution) "implicates a more demanding standard of proof." *Mirisawo v. Holder*, 599 F.3d 391, 396 (4th Cir. 2010); *see also Camara v. Ashcroft*, 378 F.3d 361, 367 (4th Cir. 2004). As we did not reach the merits of Lizama's asylum claim, we proceed to consider whether Lizama is eligible for withholding of removal.

own governing statutes"). The BIA defines a particular social group as meeting three criteria: (1) its members share common, immutable characteristics, (2) the common characteristics give its members social visibility, and (3) the group is defined with sufficient particularity to delimit its membership. *Matter of E-A-G-*, 24 I. & N. Dec. 591, 594 (B.I.A. 2008); *In re A-M-E & J-G-U*, 24 I. & N. Dec. 69, 74-76 (B.I.A. 2007); *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (B.I.A. 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439 (B.I.A. 1987).[4]

The social group as defined by Lizama clearly fails to meet the required criteria. For example, as Lizama's own expert admitted, Americanization is not an immutable characteristic. While Lizama claims that his Americanized dress and speech distinguish him, such acquired traits are not "beyond the power of [the petitioner] to change," nor so fundamental to his conscience "that it ought not be required to be changed." *Matter of Acosta*, 19 I. & N. Dec. at 234 (finding that the proposed social group of taxi drivers who refused to participate in work stoppages did not share an immutable characteristic, because the drivers could avoid guerrilla threats either by changing jobs or by cooperating in the work stoppages).

Moreover, wealth, Americanization, and opposition to gangs are all amorphous characteristics that neither "provide an adequate benchmark for determining group membership," *Matter of A-M-E & J-G-U-*, 24 I. & N. Dec. at 76, nor embody concrete traits that would readily identify a person as possessing those characteristics. *See, e.g.*, *Matter of S-E-G-*,

---

[4] While the BIA has "reaffirmed the importance of social visibility as a factor in the particular social group determination," *In re A-M-E & J-G-U-*, 24 I. & N. Dec. 69, 74 (B.I.A. 2007), and the majority of our sister circuits have deferred to the BIA's social visibility criterion, the Seventh Circuit recently rejected the visibility requirement. *See Gatimi v. Holder*, 578 F.3d 611, 615-16 (7th Cir. 2009); *Ramos v. Holder*, 589 F.3d 426, 430-31 (7th Cir. 2009). Because social visibility is not essential to the result we reach here, we need not separately evaluate that criterion.

24 I. & N. Dec. 579, 582 (B.I.A. 2008) (holding that Salvado-ran youths "who have resisted gang recruitment" failed to meet the particularity and social visibility requirements); *Matter of A-M-E & J-G-U*, 24 I. & N. at 75-76 (holding that the group "wealthy Guatemalans" failed to meet the particularity and social visibility requirements); *Ahmed v. Holder*, 611 F.3d 90, 95 (1st Cir. 2010) (holding that the characteristics "secularized" and "westernized" are neither sufficiently particular nor "readily apparent"). Lizama's attempt to narrow the group by restricting it to the category of "deportees with criminal histories" does not help matters, for this is yet another characteristic that is too broad and amorphous to have well-defined boundaries. Not only could criminal history mean anything from a reputation for committing crimes to an actual criminal record; the term also encompasses offenses ranging in severity from petty theft to first-degree murder. *See, e.g.*, *Matter of S-E-G-*, 24 I. & N. Dec. at 585 (rejecting petitioners' proposed group of "male children who lack stable families and meaningful adult protection, who are from middle and low income classes, who live in the territories controlled by the MS-13 gang, and who refuse recruitment," because "people's ideas of what those terms mean can vary") (internal citations and quotations omitted).

Lizama further contends that the BIA erred by "dissect[ing] Petitioner's social group into subparts, and fail[ing] to consider the group in its totality." Petitioner's Br. at 13. However, he does not explain how viewing the above-mentioned terms in conjunction with each other makes the group any more particular or immutable. The truth remains that, as a whole, the group described is not narrow or enduring enough to clearly delineate its membership or readily identify its members. Lizama's argument to the contrary is unavailing.

In sum, the finding that Lizama's purported group is not a "particular social group" for purposes of asylum is consistent

with the applicable legal standards and supported by substantial evidence. The BIA properly rejected his claim.[5]

## C.

Finally, we turn to Lizama's argument that the record evidence is sufficient to establish that he is entitled to CAT protection. As a threshold matter, we only have jurisdiction to review Lizama's CAT claim if he has previously exhausted all of the administrative remedies available to him as a matter of right. *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . ."). The exhaustion doctrine "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Kurfees v. INS*, 275 F.3d 332, 336 (4th Cir. 2001).

To satisfy the exhaustion requirement in CAT proceedings, an alien must raise each claim to the BIA. *Kporlor v. Holder*, 597 F.3d 222, 226 (4th Cir. 2010) (citing *Gandzia-mi-Mickhou v. Gonzales*, 445 F.3d 351, 359 n.2 (4th Cir. 2006)). A petitioner's failure to raise his CAT claim on appeal to the BIA "constitutes a failure to exhaust administrative remedies that bars judicial review." *Massis v. Mukasey*, 549 F.3d 631, 638 (4th Cir. 2008), *cert. denied*, 130 S. Ct. 736 (2009). Here, although Lizama did not address the CAT claim in his brief to the BIA, he did raise the issue in his Notice of Appeal and the BIA went on to address it.[6] Under these facts, we conclude

---

[5] Because we uphold the BIA's determination that Lizama's putative social group is not legally cognizable, it is unnecessary to reach the question of whether Lizama sufficiently established that, if repatriated, he would more likely than not face persecution on account of his membership in that group.

[6] In his Notice of Appeal to the BIA, Lizama disputed the IJ's finding that he did not qualify for CAT protection. J.A. 426 ("The Immigration Judge committed errors in denying my application . . . for protection under

there is jurisdiction for our review of the CAT issue. *See, e.g.*, *Hoxha v. Holder*, 559 F.3d 157, 163 (3d Cir. 2009) (concluding that the exhaustion requirement "does not require an appellant before the BIA, who has clearly identified an issue in his notice of appeal, to reiterate and to address that same issue in an optional brief"); *Hassan v. Gonzales*, 403 F.3d

---

CAT based on my fear of being targeted by gangs in El Salvador. . . . [T]he Immigration Judge erroneously found that the government is able to protect me from being harmed by the gangs, and that I could avoid harm by relocating within the country."). The BIA determined that, "[w]ith regard to the respondent's request for protection under the Convention Against Torture, we find that the facts do not demonstrate that the respondent would more likely than not be tortured in El Salvador by or with the acquiescence of a public official or other person acting in an official capacity." J.A. 515.

We recognize this raises the question of whether the BIA's decision to consider the CAT claim when it arguably was not fully presented to it can nevertheless fulfill the exhaustion requirement. For example, the Eleventh Circuit has observed that "[r]eviewing a claim that has not been presented to the BIA, even when the BIA has considered the underlying issue *sua sponte*, frustrates" the objective of ensuring an agency "has had a full opportunity to consider a petitioner's claim" and "compile a record which is adequate for judicial review." *Amaya-Artunduaga v. Attorney Gen.*, 463 F.3d 1247 (11th Cir. 2006) (internal citations and quotations omitted). We note, however, that Lizama did present his CAT claim to the BIA by referencing it in his Notice of Appeal—albeit cursorily—thereby distinguishing his case from the fact pattern presented to the Eleventh Circuit. *See id.* at 1250 ("Amaya failed to challenge the [issue] . . . in both his notice of appeal and brief before the BIA."). Given that the BIA was put on notice by Lizama of his CAT claim in this instance, and subsequently chose to address the claim in its decision, the goals of administrative exhaustion—namely, to afford the agency an opportunity to apply its expertise in considering petitioner's claims, to prevent premature interference by the courts, and to compile a record adequate for judicial review—were satisfied. *See, e.g.*, *Lin v. Attorney Gen.*, 543 F.3d 114, 125 (3d Cir. 2008) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)) (observing that the BIA's consideration of the merits of an issue fulfilled the interests of exhaustion, which is designed to "prevent[ ] premature inference with agency processes" and "to afford the parties and the courts the benefit of [the agency's] experience and expertise").

429, 433 n. 5 (6th Cir. 2005) (stating, in dicta, that "the arguments presented in the notice of appeal and not adopted in the subsequently filed brief are waived, *unless the BIA addresses them in its decision*") (emphasis added).

To qualify for relief under the CAT, Lizama must demonstrate that he is more likely than not to be tortured in the proposed country of removal. *See* 8 C.F.R. § 1208.16(c)(2). Unlike asylum and withholding of removal claims, which require an applicant's fear of persecution to be based on an enumerated ground, protection under the CAT is available for an applicant who can prove the likelihood of torture regardless of the motivation. *Jian Tao Lin v. Holder*, 611 F.3d 228, 236 (4th Cir. 2010) (quoting *Camara v. Ashcroft*, 378 F.3d at 371).

For purposes of the CAT, torture includes only conduct "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a). A public official acquiesces to torture if, "prior to the activity constituting torture, [the official] ha[s] awareness of such activity and thereafter breach[es] his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). We review the denial of relief under the CAT for substantial evidence. *Dankam v. Gonzales*, 495 F.3d 113, 119, 124 (4th Cir. 2007); *Haoua v. Gonzales*, 472 F.3d 227, 232-33 (4th Cir. 2007). Substantial evidence supports the determination that Lizama failed to satisfy the eligibility requirement for protection under the CAT.

Lizama asserts that financially well-off individuals such as Lizama are targeted by gangs for extortion, and those who resist gang recruitment, or generally oppose gangs, may face violent retribution and even death. He also contends that the Salvadoran government is unable to protect its citizens from gang violence. Lizama's arguments are unpersuasive.

Lizama has failed to establish he would be targeted by gangs more than any other citizens—it "is unfortunately a

problem that all socioeconomic levels in El Salvador face." J.A. 419. Moreover, he failed to demonstrate that gangs or other criminal entities in El Salvador have the approval or acquiescence of the government of El Salvador. Although record evidence indicates crime and gang violence is pervasive in El Salvador, according to the State Department's 2007 Issue Paper, "[t]he Salvadoran government does not have a policy or practice of refusing assistance to persons who receive threats or are otherwise victims of gang violence." J.A. 386. On the contrary, "[m]uch of the government's current focus is fostering and providing greater security for the public against gang violence." J.A. 386; *see also Amilcar-Orellana v. Mukasey*, 551 F.3d 86, 92 (1st Cir. 2008) (finding that the petitioner was not eligible for CAT protection because the record showed the Salvadoran government was "trying as best it can . . . to control the gangs" by creating an "Anti-Gang Task Force," prosecuting offenders, and "punish[-ing] corruption within its own police force"); *Ortiz-Araniba v. Keisler*, 505 F.3d 39, 43 (3d Cir. 2007) (holding that evidence of widespread violent activities by the MS gang in El Salvador was offset by evidence of the government's "willingness and ability to control the gang" through prosecution and incarceration of gang members). In fact, the Issue Paper further states that the Salvadoran government's "strong-hand law enforcement policy" is having a "noticeable effect," at least in the short term, of curbing gang violence. J.A. 392.

In sum, Lizama failed to establish he will "more likely than not" be tortured if removed to El Salvador, and upon review of the record, we are not compelled to find otherwise. *See* 8 C.F.R. § 1208.16(c)(2). Accordingly, we conclude that substantial evidence supports the BIA's decision denying CAT relief based on Lizama's failure to carry his burden of proof.

### III.

For the foregoing reasons, Lizama's petition for review is

*DISMISSED IN PART AND DENIED IN PART.*