**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1216**

MARIA ARACELY SANTOS MEJIA; C.E.D.; K.E.D.; A.A.D.; M.J.D.,

Petitioners,

v.

JEFFERSON B. SESSIONS III, Attorney General,

Respondent.

On Petition for Review of Order of the Board of Immigration Appeals.

Argued: January 25, 2018                    Decided: February 20, 2018

Before KING, FLOYD, and THACKER, Circuit Judges.

Petition denied by unpublished per curiam opinion.

**ARGUED:** Jacob Nephi Tingen, TINGEN & WILLIAMS, PLLC, Richmond, Virginia, for Petitioners.  Gregory A. Pennington, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Chad A. Readler, Principal Deputy, Assistant Attorney General, Justin Markel, Senior Litigation Counsel, Margaret A. O'Donnell, Trial Attorney, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Maria Santos Mejia ("Petitioner") and her children petition for judicial review of an order of the Board of Immigration Appeals ("BIA") denying their application for asylum.[1] Petitioner claims that she qualifies for asylum as a "Honduran wom[a]n evading rape and extortion." J.A. 63.[2] Because Petitioner's claimed social group is not legally cognizable pursuant to the Immigration and Nationality Act ("INA"), and because she failed to establish persecution on account of her membership in the group, we deny her petition.

## I.

In March 2014, Petitioner lived in Honduras with her four children, while her husband lived and worked in the United States. Petitioner received an anonymous letter saying she had been "elected" by a local gang. J.A. 84. She understood this as an extortion threat based on her family's "nice house" and her husband's absence. *Id.* at 402. Petitioner discussed the letter with her husband, who entertained the idea of returning to Honduras to help protect the family. Instead, the couple decided to burn the letter and hope that it was just a prank.

---

[1] The Immigration Judge refers to Maria Santos Mejia as the "lead respondent," while her children are "co-respondents." Although the application for asylum is not in the record before us, it appears Maria Santos Mejia filled out the application and included her children as co-applicants.

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

But after midnight on April 7, 2014, several unidentified individuals knocked loudly on Petitioner's door, demanding money. When Petitioner refused to open the door and said she had no money to give, the individuals demanded she allow them inside so they could "play" with one of her underage daughters. J.A. 86. Petitioner understood this as a threat of rape. At this point, roughly 1:00 a.m., Petitioner called the police and took her family into a bathroom to hide. Finally, the unknown individuals left, but not before firing several shots into Petitioner's bedroom. Petitioner and her children fled and spent the remainder of the night at a neighbor's house. Police did not arrive to the scene until roughly 8:00 a.m., seven hours after Petitioner's initial distress call. Because of the delay, Petitioner testified that she does not trust the local police.

Fearing her family's safety after the incident, Petitioner entered the United States with her children. Petitioner has since been charged with removability under the INA as an alien present in the United States without admission or parole. *See* 8 U.S.C. 1182(a)(6)(A)(i). Petitioner timely filed an Application for Asylum and Withholding of Removal for herself and her children. Petitioner claimed persecution on account of her status as a "Honduran wom[a]n evading rape and extortion." J.A. 63.

After a hearing, an Immigration Judge ("IJ") deemed Petitioner's testimony "generally credible." J.A. 319. The IJ also noted that Honduras has "severe" gang violence and a "pervasive" rape problem. *Id.* at 320. However, the IJ ultimately concluded that Petitioner was not a member of a legally cognizable social group for the purpose of asylum, nor was her persecution "on account of" her status as a "Honduran wom[a]n evading rape and extortion." *Id.* at 325–26. The IJ issued an order of removal.

Petitioner appealed the decision to the BIA, and the BIA affirmed. She then petitioned this court for judicial review of the BIA's order.

## II.

"We must uphold the denial of [an applicant's] asylum claim unless such denial is 'manifestly contrary to the law and an abuse of discretion.'" *Zelaya v. Holder*, 668 F.3d 159, 165 (4th Cir. 2012) (quoting 8 U.S.C. § 1252(b)(4)(D)).

Pursuant to the INA, the Attorney General has discretion to grant asylum to an alien that qualifies as a "refugee." 8 U.S.C. § 1158(b)(1)(A). "The burden of proof is on the applicant to establish that the applicant is a refugee." *Id.* § 1158(b)(1)(B)(i). A refugee is "any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of . . . membership in a particular social group." *Id.* § 1101(a)(42)(A).

## III.

Because there is no statutory or regulatory definition of a "particular social group," we defer to the BIA's reasonable interpretation of the term. *See Lizama v. Holder*, 629 F.3d 440, 446–47 (4th Cir. 2011). "The BIA defines a particular social group as meeting three criteria: (1) its members share common, immutable characteristics, (2) the common characteristics give its members social visibility, and (3) the group is defined with sufficient particularity to delimit its membership." *Id.* at 447 (citing *Matter of E-A-G-*, 24 I. & N. Dec. 591, 594 (B.I.A. 2008); *In re A-M-E & J-G-U*, 24 I. & N. Dec. 69, 74–76 (B.I.A. 2007); *Matter of Acosta*, 19 I. & N. Dec. 211, 233

4

(B.I.A. 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439 (B.I.A. 1987)).

Here, Petitioner claims membership in a social group consisting of "Honduran women evading rape or extortion." J.A. 63. The BIA concluded that Petitioner's proposed group satisfies the first criteria because its members share a common, immutable characteristic of evading rape.[3] However, the BIA denied the petition because the proposed social group failed the social visibility and particularity criteria. Further, the BIA determined that Petitioner was not persecuted on account of her status as a Honduran woman evading rape and extortion.[4]

A.

The BIA concluded that Petitioner's social group was not legally cognizable because its members were not "socially visible" and the group is not defined with "particularity." J.A. 3–4. The social visibility criteria requires "that society in general perceives, considers, or recognizes persons sharing the particular characteristic to be a group." *Matter of W-G-R-*, 26 I. & N. Dec. 208, 217 (B.I.A. 2014). Social visibility refers to the perception by society as a whole, rather than "solely . . . the perception of an

_____

[3] A common, immutable characteristic is one "that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Matter of Acosta*, 19 I. & N. Dec. at 233. Clearly, "evading rape" is a characteristic that women should not be required to change.

[4] *See* 8 U.S.C. 1101(a)(42)(A) (allocating refugee status to individuals with "a well-founded fear of persecution *on account of* . . . membership in a particular social group") (emphasis supplied).

applicant's persecutors." *Id.* at 218. The particularity criteria is related. "The essence of the 'particularity' requirement . . . is whether the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons." *Matter of S-E-G-*, 24 I. & N. Dec. 579, 584 (B.I.A. 2008). Examples of social groups satisfying both criteria include tribal women opposed to female genital mutilation ("FGM"), former members of the national police, and homosexuals. *See Matter of W-G-R-*, 26 I. & N. Dec. at 217.

Here, Petitioner's proposed group is closely analogous to social groups previously rejected by the BIA and this court. *See, e.g.*, *Zelaya v. Holder*, 668 F.3d 159, 166–67 (4th Cir. 2012) (affirming the BIA's refusal to recognize a group composed of "young Honduran males who refuse to join MS-13, have notified the police of MS-13's harassment tactics, and have an identifiable tormentor within the gang"); *Lizama*, 629 F.3d at 446–48 (rejecting a social group composed of "young, Americanized, well-off Salvadoran male deportees with criminal histories who oppose gangs"); *Matter of S-E-G-*, 24 I. & N. Dec. at 588 (rejecting a proposed social group consisting of "young Salvadorans who have been subject to recruitment efforts by criminal gangs, but who have refused to join for personal, religious, or moral reasons").

In support of her position, Petitioner relies upon *In re Kasinga*, 21 I. & N. Dec. 357 (1996). There, the BIA recognized a social group of "young women of the Tchamba-Kunsuntu Tribe who have not had FGM, as practiced by that tribe, and who oppose the practice." *Id.* at 358. But, of note, the country from which the applicant in *Kasinga* had fled, Togo, failed to engage in even "minimal efforts to protect women from

6

FGM." *Id.* at 362. The same cannot be said of Honduras and its efforts to protect women from rape. *See* J.A. 213 ("[Honduran] law criminalizes all forms of rape . . . . The penalties for rape range from three to nine years' imprisonment, and the courts enforced these penalties."). Moreover, women evading rape and extortion in Honduras cannot be said to be "distinct within society" as were tribeswomen opposing FGM in Togo. Indeed, a group consisting of "Honduran women evading rape and extortion" would surely include every woman in Honduras.[5]

In short, there is ample precedent to support the conclusion that "Honduran women evading rape and extortion" lacks socially visibility and particularity. Therefore, we cannot conclude that the BIA's decision was "manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

B.

To be eligible for asylum, the applicant must face persecution on account of his or her membership in a claimed social group. 8 U.S.C. § 1101(a)(42)(A). Membership need not "be *the* central reason or even a dominant central reason for persecution," but it must be more than "an 'incidental, tangential, superficial, or subordinate' reason." *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 164 (4th Cir. 2009) (emphasis in original)

---

[5] At oral argument, Petitioner attempted to narrow the scope of the proposed social group by suggesting the group would only encompass women "in a situation where rape is imminent." Oral Argument at 4:00–5:00, *United States v. Santos Mejia*, No. 17-1216 (4th Cir. Jan. 25, 2018), http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments. Because our review is statutorily limited to issues raised before the BIA, we cannot accept Petitioner's invitation to narrow the social group claimed below. *See* 8 U.S.C. § 1252(b)(4)(A).

(quoting *Matter of J-B-N- & S-M-*, 24 I. & N. Dec. 208, 214 (B.I.A. 2007)). Because this is a factual finding, we must uphold the decision of the BIA "unless no rational factfinder could agree with the BIA's position." *Temu v. Holder*, 740 F.3d 887, 891 (4th Cir. 2014).

Here, the IJ found that Petitioner failed to establish a nexus between her persecution and membership in her proposed social group. Petitioner acknowledges that she was "elected" because she "was living in a good house" and her husband "would send [money.]" J.A. 110. Further, as the IJ observed, the risk of future retaliation is not specifically attributable to her status as a "Honduran woman evading rape and extortion":

> Although . . . evidence indicates gang members often make an example of those who refuse extortion demands, it is insufficient to show [Petitioner] is at greater risk of retaliation than any other Honduran citizen who refuses to comply with an extortion demand or other criminal request. *See S-E-G-*, 24 I. & N. Dec. at 587. "Generally harsh conditions shared by many other persons [do] not amount to persecution." *Acosta*, 19 I. & N. Dec. at 222. In Honduras, the general population is subject to the harsh conditions posed by gang violence, including retaliation for defying a gang member's demands. Thus, the Court finds [Petitioner] has not established a nexus between the persecution she fears and a protected ground.

*Id*. at 49 (citation to administrative record omitted).

Accordingly, we affirm the IJ and BIA's factual finding that Petitioner has failed to establish a sufficient nexus.

8

IV.

While we sympathize with Petitioner's plight, we are nonetheless constrained to conclude that the BIA did not err in finding that the INA does not afford her asylum. Therefore, the petition for review is

*DENIED*.