**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 24-2268**

───────────

CARLOS ALBERTO BORJAS TOBIAS,

                    Petitioner,

        v.

PAMELA JO BONDI, Attorney General,

                    Respondent.

───────────

On Petition for Review of an Order of the Board of Immigration Appeals.

───────────

Submitted:  November 7, 2025                    Decided:  February 19, 2026

───────────

Before GREGORY and RICHARDSON, Circuit Judges, and TRAXLER, Senior Circuit Judge.

───────────

Petition for review denied by unpublished per curiam opinion.

───────────

**ON BRIEF:** Joshua Adam Berman, BLAINE L. GILBERT & ASSOCIATES, P.A., Baltimore, Maryland, for Petitioner.  Yaakov M. Roth, Acting Assistant Attorney General, Shelley R. Goad, Jennifer A. Singer, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Petitioner Carlos Alberto Borjas-Tobias ("Borjas"), petitions for review of an order of the Board of Immigration Appeals dismissing his appeal from the Immigration Judge's denial of his application for protection under the Convention Against Torture ("CAT"). Finding no reversible error, we deny the petition for review.

I.

Borjas is a native and citizen of Honduras. He unlawfully entered the United States at or near Rio Grande City, Texas, on or about November 3, 2012, and was intercepted by immigration officials. The Department of Homeland Security served Borjas with a Notice to Appear, charging him as removable for being present in the United States without having been admitted or paroled. Borjas applied for asylum, withholding of removal, and CAT protection.[1] A hearing was held before the immigration judge (IJ) on May 14, 2019, at which time Borjas withdrew his claim for asylum and withholding of removal and elected to proceed solely on his application for relief under the CAT.

At the hearing, Borjas pointed to several incidents that led him to leave Honduras in 2012. The first incident occurred sometime in 2010. Borjas testified that he was robbed at gunpoint shortly after he withdrew money from an ATM. Borjas did not know the

---

[1] Borjas's illegal entry in 2012 was at least his seventh. The record reflects that Borjas unlawfully entered the United States six times between 1985 and 2008. Borjas has also had several brushes with the law during his stays in the United States. He was arrested for driving under the influence in 1995, and he was arrested for two separate counts of theft in 2001. In 2013, after his most recent illegal entry, he was convicted of theft and served 90 days in jail.

identity of the robber. He filed a police report. The police prepared a photo lineup of possible suspects for Borjas's review, but Borjas did not recognize anyone as the perpetrator.

The second incident occurred in August 2012. Borjas testified that individuals identifying themselves as members of the 18 Street gang came to Borjas's painting business, pointed a gun at him, and stole his ID, wallet, money, and a laptop. They also demanded that he make monthly "rent" payments of 3000 lempiras to the gang or face the consequences. Borjas again contacted the police, who responded. A police report was taken, but Borjas did not know and could not identify the individuals who robbed him.

Two days later, Borjas received a call from an individual identifying himself as an 18 Street gang member. The caller told Borjas that he would be killed if he did not make weekly payments of 800 lempiras to the gang. Borjas received several additional calls after that, reminding him that he needed to make the payments. Borjas testified that he closed his business instead and never made any payments. He testified that the calls stopped in September, and he believes this is because the gang found out that he closed his business. Borjas never reported the telephone calls to the police.

In November 2012, Borjas left his wife and several children in Honduras and illegally entered the United States. He testified that he is afraid to return to Honduras because he fears the gang will kill him and the police will not help him. He testified that he believes the police cooperate with the gangs and only care about wealthy people, but he bases this belief upon newspaper reports and other hearsay, and not upon personal experiences.

3

At the conclusion of the hearing, the IJ found that Borjas had "barely" established past torture but had failed to establish that it was more likely than not that he would be tortured in the future by or with the acquiescence of the Honduran government. J.A. 60. The BIA found no clear error in the IJ's factual findings and affirmed the IJ's decision to deny protection under the CAT. This petition for review followed.

## II.

## A.

To qualify for CAT protection, "an applicant must show that it is more likely than not that he or she would be tortured in the country of removal." *Herrera-Martinez v. Garland*, 22 F.4th 173, 185 (4th Cir. 2022) (cleaned up). Torture is defined as "(1) any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person in a manner that is (2) by or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* (cleaned up); *see also* 8 C.F.R. 1208.18(a)(1). Evidence of past torture is relevant to a CAT claim but does not create a presumption of future torture. *Cabrera Vasquez v. Barr*, 919 F.3d 218, 222 (4th Cir. 2019). When determining the likelihood of future torture, "the IJ should consider: (1) evidence of past torture; (2) whether the applicant could safely relocate to another part of the country; (3) evidence of gross, flagrant, or mass violations of human rights within the country of removal; and (4) other relevant information of country conditions." *Id.* (cleaned up); *see also* 8 C.F.R. § 1208.16(c)(3). "A public official acquiesces to torture if that official is aware of the activity constituting torture prior to the activity and breaches his or her 'legal responsibility to intervene to prevent such activity.'" *Cabrera Vasquez*, 919 F.3d at 222

4

(quoting 8 C.F.R. § 1208.18(a)(7)). "Officials need not have actual knowledge of the torture; it is enough if they simply turn a blind eye to it." *Id.* (cleaned up).

When, as here, the Board adopts and affirms the IJ's decision denying CAT relief, and supplements it with its own reasoning, we review both decisions. *Nolasco v. Garland*, 7 F.4th 180, 186 (4th Cir. 2021). "We review [the agency's] factual findings for substantial evidence" and its "legal conclusions de novo." *Id.* "The agency's factual findings— including its predictions about the likelihood of future mistreatment and government acquiescence—are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Ponce-Flores v. Garland*, 80 F.4th 480, 484 (4th Cir. 2023) (cleaned up). "[W]e review for abuse of discretion claims that the agency failed to offer a reasoned explanation for its decision or distorted or disregarded important aspects of the applicant's claim." *Id.* (cleaned up).

B.

Borjas argues that the BIA's holding that he failed to show Honduran government acquiescence is contrary to law and an abuse of discretion. More specifically, he argues that the IJ and BIA should have given more weight to his testimony about police inaction and corruption in Honduras, and that the country-conditions evidence corroborated his testimony. We find no error.

Although the IJ credited Borjas's testimony about the specific incidents that occurred in 2010 and 2012, the IJ found that the testimony failed to establish that the Honduran police had turned a blind eye to the crimes or that it would be willfully blind to any future torture. On the contrary, Borjas's own testimony established that the Honduran

5

police did act. The police responded to his report of the 2010 robbery, took the criminal report, and prepared a photo lineup of potential suspects for his review. But Borjas could not identify the perpetrator. The police also responded to Borjas's call about the August 2012 robbery and took the criminal report. But again, Borjas did not know the identity of the perpetrators. And Borjas never reported the gang's follow-up calls demanding payments to the police. He was never physically confronted after the August 2012 robbery and the telephone calls ceased in September 2012. Approximately two months later, Borjas left Honduras and illegally entered the United States. The IJ found that Borja's testimony showed that the police did *not* turn a blind eye to the criminal activity reported by Borjas, and we cannot say that this is unsupported by substantial evidence or erroneous as a matter of law.

The IJ also considered Borja's testimony that the police did not properly investigate the two robberies but found that this claim was based on mere supposition. Borjas's opinions about police inaction were based on his general beliefs about common police practices in Honduras and were not grounded in any personal knowledge of what the police did or did not do with respect to the incidents he reported. Moreover, and as the IJ observed, there are a myriad of legitimate reasons why police officers do not further investigate reported crimes, and why they cannot solve them. In this case, Borjas acknowledges that he was unable to identify the robber from the 2010 incident at the time of the crime or in the photo lineup prepared by the police. He was also unable to identify any 18 Street gang member involved in the 2012 robbery, and he did not report the follow-up telephone calls demanding that he make payments. The IJ found that the mere "fact

6

that police have not acted on a particular report of an individual crime does not necessarily mean that the government is unable or unwilling to control the crime." J.A. 61. The BIA agreed, and so do we. *See e.g., Andrade-Garcia v. Lynch*, 828 F.3d 829, 836 (9th Cir. 2016) ("The inability to bring the criminals to justice is not evidence of acquiescence. . . ."); *Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014) ("Evidence that the police were aware of a particular crime, but failed to bring the perpetrators to justice, is not in itself sufficient to establish acquiescence in the crime. Instead, there must be evidence that the police are unable or unwilling to oppose the crime.").

We also find no error in the IJ's and BIA's consideration of the country-conditions evidence. The IJ meaningfully engaged with the evidence submitted by Borjas but found it also failed to prove, either alone or in conjunction with Borjas's testimony, that the Honduran government is willfully blind to the type of torture Borjas experienced and would breach its legal responsibility to intervene to prevent the torture. Although the evidence indicated that gang violence and corruption remain a problem in Honduras, the IJ found that the government "is aware of the torturous acts that are often inflicted by gangs in Honduras and [is] taking meaningful steps to combat them." J.A. 63. And we cannot say that the evidence compels an opposite conclusion. *See, e.g., Moreno-Osorio v. Garland*, 2 F.4th 245, 257 (4th Cir. 2021) (finding that the IJ and BIA reasonably inferred from the country conditions evidence "that the Honduran Government had taken significant steps since . . . 2012 to combat police corruption"); *Lizama v. Holder*, 629 F.3d 440, 449-50 (4th Cir. 2011) (finding that petitioner "failed to demonstrate that gangs or other criminal entities in El Salvador have the approval or acquiescence of the government," where the

7

country conditions evidence showed that the Salvadoran government was working to provide "greater security for the public against gang violence.").

In sum, we see no legal error or abuse of discretion in the IJ's and BIA's consideration of the evidence submitted in support of Borjas's claim for protection under the CAT, or its reasoned explanation for the decision reached. The agency's finding that Borjas failed to establish that he will "more likely than not" be tortured if removed to Honduras is supported by substantial evidence and is in accordance with the law.

III.

For the foregoing reasons, we deny the petition for review. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*PETITION FOR REVIEW DENIED*