**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1610**

NOEL ARISTIDES CANALES-RIVERA,

                Petitioner,

        v.

WILLIAM P. BARR, Attorney General,

                Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued:  October 30, 2019                           Decided:  January 27, 2020

Before AGEE, THACKER, and QUATTLEBAUM, Circuit Judges.

Petition denied by published opinion.  Judge Quattlebaum wrote the opinion, in which Judge Thacker joined.  Judge Agee wrote a concurring opinion.

**ARGUED:**  Richard J. Douglas, RICHARD J. DOUGLAS LLC, College Park, Maryland, for Petitioner.  Andrew B. Insenga, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Joseph H. Hunt, Acting Assistant Attorney General, Briena L. Strippoli, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

QUATTLEBAUM, Circuit Judge:

Noel Aristides Canales-Rivera, a native Honduran, claims he was persecuted by gang members because he was a merchant in the formal Honduran economy. He petitions this Court for review of the Order of the Board of Immigration Appeals ("BIA") dismissing his appeal of an Immigration Judge's ("IJ") denial of his application for asylum, and, alternatively, for withholding of removal and protection under the Convention Against Torture ("CAT"). Canales claims the BIA has improperly adopted a sweeping bar to asylum claims brought by merchants and violated his due process rights by declining to hear his argument for asylum eligibility and by failing to address the particular social group he proposed. For the reasons below, we deny the petition for review and affirm the BIA.

I.

By way of background, the Immigration and Nationality Act ("INA") vests the Attorney General with the discretion to grant asylum to "refugees" who are unable or unwilling to return to their native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. . . ." 8 U.S.C. § 1101(a)(42)(A); *see also* 8 U.S.C. § 1158(b)(1)(B); *Dankam v. Gonzales*, 495 F.3d 113, 115–16 (4th Cir. 2007). "[A]n individual seeking asylum must show (1) that he has a subjective fear of persecution based on race, religion, nationality, social group membership, or political opinion, (2) that a reasonable person would have a fear of persecution in that situation, and (3) that his fear has some basis in objective reality." *Rusu v. I.N.S.*, 296 F.3d 316, 324 (4th Cir. 2002).

2

Importantly, the burden of proof rests with the applicant to establish status as a refugee. 8 U.S.C. § 1158(b)(1)(B); *Gandziami–Mickhou v. Gonzales*, 445 F.3d 351, 353 (4th Cir. 2006).

The alleged reason for persecution here is membership in a particular social group. Neither the INA nor its associated regulations specifically define "particular social group." But following the BIA, we require a "particular social group" to meet three criteria: "(1) its members share common, immutable characteristics, (2) the common characteristics give its members social visibility, and (3) the group is defined with sufficient particularity to delimit its membership." *Lizama v. Holder*, 629 F.3d 440, 446–47 (4th Cir. 2011) (citing *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (B.I.A. 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439 (B.I.A. 1987)). As for the immutability requirement, "the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Crespin-Valladares v. Holder*, 632 F.3d 117, 124 (4th Cir. 2011) (quoting *Matter of Acosta*, 19 I. & N. Dec. at 233). An applicant must demonstrate a nexus between the persecution suffered and the membership in a particular group. *Alvarez Lagos v. Barr*, 927 F.3d 236, 246 (4th Cir. 2019); *see also Oliva v. Lynch*, 807 F.3d 53, 58 n.3 (4th Cir. 2015) (noting that both asylum and withholding of removal claims rely on the same factual basis).

## II.

Turning now to the factual and procedural background of this appeal, while living in Honduras, Canales operated a roasted chicken business. He claims that Mara 18 gang

members persecuted him by demanding money and threatening him with physical violence and death when he refused to pay.[1] Canales eventually closed his business and fled Honduras for the United States, entering without inspection. He was then detained by border security, placed in removal proceedings and transferred into Immigration and Customs Enforcement custody. After receiving notice of his removal hearing, Canales filed a timely asylum application.

The IJ denied the asylum request after a merits hearing and concluded that Canales did not meet the standard for withholding of removal nor was he entitled to relief under the CAT. The IJ acknowledged that Canales claimed persecution based on membership in a particular social group, but described the social group as "one who defied demands of gangs in Honduras." (J.A. 485.) Despite finding that Canales testified credibly, the IJ determined that Canales failed "to establish that he has been persecuted in the past in Honduras because of either his race, religion, nationality, membership in a particular social group, or political opinion." (J.A. 485.) He further concluded that Canales did not meet his burden of proving that, if returned to Honduras, he would be tortured by or with the acquiescence of public officials to establish entitlement for relief under CAT.

---

[1] Mara 18—also known as 18th Street gang, Calle 18, Barrio 18 or La 18—began in Los Angeles in the 1960s by Mexican immigrants but grew to incorporate members from other ethnic backgrounds and countries. As Central American members were arrested and deported to their native countries, Mara 18 gained a foothold and grew in Central America, particularly the northern triangle of El Salvador, Guatemala and Honduras. The gang's criminal activities are far reaching—ranging from drug trafficking, to extortion to murder. In fact, the violence of Mara 18 and other gangs led the northern triangle of Central America to have one of the world's highest homicide rates. *See* Clare Ribano Seelke, Cong. Research Serv., RL34112, Gangs in Central America 3 (2016).

Canales appealed the IJ's Order to the BIA maintaining that the IJ committed evidentiary and procedural errors and disregarded the particular social group he posited. After a de novo review, the BIA denied relief and dismissed the appeal. The BIA acknowledged the IJ failed to review the proposed social group of "merchants in the formal Honduran economy." But the BIA evaluated that alleged social group in its own review and concluded that the group was not legally cognizable. More specifically, it held that merchants of the Honduran formal economy lack the immutability required by law. The BIA further explained that while Canales experienced extortion, such general criminal conduct did not constitute persecution on account of his membership in the proposed social group, and so was not a basis for asylum or related protection. The BIA also agreed with the IJ that Canales failed to establish that he would experience torture inflicted by or at the instigation of or with the consent or acquiescence of a public official if he returned to Honduras.[2]

Canales filed a timely petition to this Court. We have jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. § 1252. *See Huaman-Cornelio v. Bd. of Immigration Appeals*, 979 F.2d 995, 999 (4th Cir. 1992) (recognizing that final orders in deportation proceedings come from the BIA, the highest administrative tribunal, and thus, the court of appeals reviews the findings and order of the BIA).

---

[2] The BIA also rejected Canales's argument that the IJ's evidentiary or procedural errors denied him a fair hearing concluding that the IJ's overall conduct of the hearing was within proper judicial bounds.

III.

On appeal, Canales makes two primary arguments. First, he argues that the Executive Office for Immigration Review of the Department of Justice, acting through the Attorney General (the "Agency"), improperly applied a bar to asylum for merchant persecution victims like Canales by relying on the seminal BIA case *Matter of Acosta,* 19 I. & N. Dec. 211 (B.I.A. 1985), to conclude that a petitioner's identity as a merchant is not an immutable characteristic. Canales maintains that the Agency adopted a non-neutral policy on merchant persecution victims inconsistent with the Supreme Court mandates in *Braunfeld v. Brown*, 366 U.S. 599 (1961), *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) and *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 138 S. Ct. 1719 (2018). He contends that these decisions demonstrate the Supreme Court's recognition of merchant claims in matters of conscience. Second, Canales argues that the Agency violated Canales's due process rights by substituting its own particular social group formation for the group he alleged and declining to hear his argument for asylum eligibility.[3]

---

[3] In his opening brief, Canales does not express any disagreement with the BIA in its affirmance of the IJ's finding that fear of general criminal extortion fails to amount to persecution on account of membership in his proposed social group. *See Crespin-Valladares*, 632 F.3d at 127 ("[T]he INA mandates that those who seek refugee status demonstrate that they fear persecution 'on account of' a protected ground."). As Canales has abandoned any challenge to this conclusion, we note that the BIA's determination of this matter provides an independent and alternative ground to deny Canales's petition, *Yousefi v. U.S. INS*, 260 F.3d 318, 326 (4th Cir. 2001) (per curiam), but decline to further address it because we also agree that Canales failed to posit a particular social group eligible for asylum or related protection.

In response, the Agency argues that the Court lacks jurisdiction to review Canales's argument that the BIA's interpretation of "particular social group" is contrary to Supreme Court precedent concerning merchants because it was not raised below. And as to the IJ's purported failure to consider the social group Canales proposed, the Agency contends any error did not impact the outcome of the proceedings because the BIA considered his proposed particular social group and properly concluded that the group was not legally cognizable.

## IV.

Before we address the merits of the parties' arguments on appeal, we set forth our standard of review. "[A]ny judicial inquiry into the handling of immigration matters is substantially circumscribed" because matters of immigration are primarily within the control of the executive and the legislature. *Rusu*, 296 F.3d at 320. We review the BIA's legal conclusions de novo and our review of the agency's factual findings is narrow and deferential. *Mulyani v. Holder*, 771 F.3d 190, 197 (4th Cir. 2014).

Consistent with that standard, a BIA decision granting or denying asylum under 8 U.S.C. § 1158(a) "shall be conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D); *see also Djadjou v. Holder*, 662 F.3d 265, 273

---

Canales also fails to challenge the BIA's rulings finding him ineligible for CAT protection or withholding of removal. We, therefore, decline to address this ruling as well. *See Williams v. Giant Food Inc.*, 370 F.3d 423, 430 n. 4 (4th Cir. 2004) ("As an initial matter, Williams makes no argument in her brief to support this assertion, and we deem it abandoned on appeal.") (citing Fed. R. App. P. 28(a)(9)).

(4th Cir. 2011). We may not disturb the BIA's determinations on asylum eligibility so long as those determinations "are supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Tassi v. Holder,* 660 F.3d 710, 719 (4th Cir. 2011).

V.

Although not the primary focus of his appellate arguments, we start by addressing Canales's substantive claim that the Agency violated his due process rights by declining to hear his argument for asylum eligibility and by failing to address the particular social group he proposed. To be sure, deportation and asylum hearings are subject to the requirements of procedural due process. *Rusu,* 296 F.3d at 320. To succeed on a due process claim in an asylum proceeding, Canales must establish two closely linked elements: "(1) that a defect in the proceeding rendered it fundamentally unfair and (2) that the defect prejudiced the outcome of the case." *Anim v. Mukasey*, 535 F.3d 243, 256 (4th Cir. 2008). Prejudice requires that the "rights of [an] alien have been transgressed in such a way as is likely to impact the results of the proceedings." *Rusu,* 296 F.3d at 320-321 (internal citations and quotation marks omitted). We conclude that Canales is unable to meet this standard.

First, we, like the BIA, acknowledge the IJ did not address "merchants in the formal Honduran economy" as Canales's proposed particular social group. But the BIA did so upon review, specifically considering the exact social group proposed by Canales, applying the criteria set forth in *Acosta* and concluding that being a merchant in the formal Honduran economy is not an immutable characteristic. Importantly, the BIA was administratively authorized to address the IJ's decision on appeal and the "scope of this review [is not

8

limited] in any way." *Huaman-Cornelio*, 979 F.2d at 998 ("The BIA, not the IJ, wields ultimate authority over asylum decisions, subject only to the specific intervention of the Attorney General."). Thus, Canales cannot demonstrate any prejudice from a due process perspective based on any failings in the IJ's analysis.

Further, the BIA was substantively correct in its analysis. The BIA's long-standing interpretation of "particular social group" as a group of persons sharing a common, immutable characteristic dates to *Acosta*. There, the BIA concluded that being a member of an organization of taxi drivers as part of the transportation industry of El Salvador and refusing to participate in guerrilla-sponsored work stoppages were not immutable characteristics that constituted membership in a particular social group because members could avoid any threats from guerrilla members by either changing jobs or by cooperating with the stoppage. The BIA concluded that "'[p]ersecution on account of membership in a particular social group' refers to persecution that is directed toward an individual who is a member of a group of persons all of whom share a common, immutable characteristic. . . ." *Matter of Acosta*, 19 I. & N. Dec. at 212.

Since then, this Court and other circuit courts have rejected similar arguments related to merchants and other entrepreneurial groups. In an unpublished decision, this Court affirmed a BIA order denying an application for asylum and withholding of deportation where the petitioner had asserted persecution on the basis of membership in an "entrepreneurial social group." *Arevalo v. I.N.S.*, 176 F.3d 475, 1999 WL 181587, at *2 n.2 (4th Cir. 1999) (unpublished table decision). There, we concluded that "Arevalo's allegation that her family members were targeted as the proprietors of a restaurant does not

9

qualify her as a member of a social group within the protections of the statute." *Id.* at \*2. Likewise, we have acknowledged that we must defer to the BIA's reasonable interpretation of "particular social group."[4] *See Lizama v. Holder*, 629 F.3d at 446-47. And for this reason, this Court has consistently cited to *Acosta* in adopting its conception of "particular social group" and in focusing on the immutability criterion. *See, e.g.*, *Crespin-Valladares*, 632 F.3d at 124.

Other circuits have followed suit. In *Mwembie v. Gonzales*, 443 F.3d 405 (5th Cir. 2006), the Fifth Circuit rejected a petitioner's claim that she was persecuted on account of membership in a particular social group of government employees. There, the Fifth Circuit concluded that the petitioner could change her employment, meaning that she was not a member of a group of persons who share a common immutable characteristic. *Id.* at 414-15 (5th Cir. 2006). Similarly, in *Nadmid v. Holder*, 784 F.3d 357 (7th Cir. 2015), the Seventh Circuit held that the proposed social group of "Mongolian business owners who seek to expose and end political corruption of private businesses," was premised on a profession as opposed to an "immutable and fundamental characteristic." *Id.* at 359-60.

Although the BIA's order dismissing Canales's appeal is consistent with this precedent, Canales urges us to reject these decisions arguing they are based on *Acosta*'s flawed foundation of a blanket prohibition against merchants. We disagree. Instead, we

---

[4] This Court defers to the BIA's reasonable interpretation of a particular social group under *Chevron U.S.A., Inc., v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See also Crespin-Valladares,* 632 F.3d at 124 (holding that *Chevron* deference should be accorded to the BIA's long-standing interpretation of "particular social group.")

read *Acosta* as an individualized decision evaluating the social group identified by the petitioner there to the criteria the BIA set forth for a recognizable particular social group.

Canales alternatively argues that "merchants in the formal Honduran economy" meet the *Acosta* criteria for a social group because they have the immutable characteristics of self-determination and self-sufficiency. But these characteristics are not limited to the members of the group Canales proposes. Indeed, these characteristics apply to many in Honduras and elsewhere whether or not they are merchants. An application for asylum requires more than designating an otherwise undefined group and identifying characteristics that apply to members of society in general.[5] If we were to accept the characteristics offered by Canales as sufficiently immutable, we would effectively eliminate the boundaries for social groups our precedent requires.

Finally, we address Canales's argument that the Agency's non-neutral stance on merchant individual identity and conscience is prohibited by the Supreme Court decisions in *Braunfeld, Hobby Lobby* and *Masterpiece Cakeshop*. This issue is the primary focus of Canales's briefing. Despite that, the Agency maintains it is unexhausted as it was never

---

[5] In addition to immutability, members of a particular social group must have "social visibility, meaning that members possess characteristics visible and recognizable by others in the native country; be defined with sufficient particularity to avoid indeterminacy; and not be defined exclusively by the fact that its members have been targeted for persecution." *Zelaya v. Holder*, 668 F.3d 159, 165–66 (4th Cir. 2012) (recognizing that the petitioner's proposed social group of young Honduran males who refuse to join MS-13 did not have the immutable characteristic of family bonds and denying petition for review with respect to asylum and withholding of removal claims). Further, a proposed social group must have "particular and well-defined boundaries, such that it constituted a discrete class of persons." *Id.* at 166. But the BIA concluded that the proposed particular social group is not legally cognizable because being a merchant is not an immutable characteristic. Thus, we need not further address these additional requirements.

11

raised before the Agency. Therefore, according to the Agency, we lack jurisdiction to review it now. In response, Canales contends he fully documented and briefed before the Agency his argument concerning merchant eligibility and the viability of economic activity as the foundation for his qualifying particular social group membership. Citing *Ramirez v. Sessions*, 887 F.3d 693 (4th Cir. 2018), Canales argues that he satisfies the exhaustion requirement because he presented the basis for relief below and is simply developing the argument before this Court by citing instructive Supreme Court precedent.

Although this is a close issue, we find we have jurisdiction. Even still, the Supreme Court decisions cited above are far too distant from Canales's claim that merchants in the formal Honduran economy are a protected class under federal immigration laws to support his petition. As the Agency correctly points out, these cases involve the First Amendment's religious freedoms and the Religious Freedom Restoration Act ("RFRA"). They in no way identify merchants as a particular or specific class of individuals entitled to certain absolute protections under the INA, nor do they relate in any way to Canales's claims for asylum.[6] We decline to disturb the BIA's determinations.

---

[6] We find any remaining due process claims about procedures employed by the Agency to be unavailing. Reviewing these claims de novo, Canales fails to show the alleged errors impacted the outcome of his case. Immigration judges have fairly broad power, by way of regulations, to exercise independent judgment and discretion. *See Rusu*, 296 F.3d at 320; 8 C.F.R. § 1003.1. Further, evidentiary determinations in immigration proceedings are limited only by due process considerations. *Anim*, 535 F.3d at 256.

## VI.

In conclusion, we must uphold the denial of Canales's asylum claim unless that denial is "manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D). The BIA's ruling that Canales's proposed social group does not constitute a particular social group under the INA is not manifestly contrary to the law nor an abuse of discretion. For the foregoing reasons, we deny Canales's petition for review and affirm the BIA's order.[7]

*PETITION DENIED*

---

[7] Although Canales abandoned his withholding of removal challenge on appeal, we note that because Canales is ineligible for asylum under the INA, he necessarily fails to establish the higher standard of proof for withholding under the INA. *Zelaya*, 668 F.3d at 167.

AGEE, Circuit Judge, concurring in the judgment:

I concur in the majority's conclusion that Noel Aristides Canales-Rivera cannot demonstrate any prejudice with respect to his due process claim because the Board of Immigration Appeals (the "BIA") independently rejected his proposed social group. Further, I agree that the BIA was substantively correct in its analysis, applying the criteria set forth in *Matter of Acosta*, 19 I. & N. Dec. 211 (B.I.A. 1985), *overruled in part on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439 (B.I.A. 1987), to conclude that a petitioner's identity as a merchant in the formal Honduran economy is not an immutable characteristic for purposes of establishing eligibility for asylum.

I write separately, however, because I respectfully disagree with the majority's conclusion that we have jurisdiction to consider Canales' argument that the Executive Office for Immigration Review (the "Agency") utilizes a non-neutral stance on merchant identity and conscience that is prohibited by the Supreme Court's decisions in *Braunfeld v. Brown*, 366 U.S. 599 (1961); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); and *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 138 S. Ct. 1719 (2018). While I agree with the majority's substantive conclusion that these cases "in no way identify merchants as a particular or specific class of individuals entitled to certain absolute protections" or "relate in any way to Canales's claims for asylum," Maj. Op. at 12, I would hold that the Court lacks jurisdiction to consider this claim because Canales has failed to exhaust this particular contention before the Agency. *See* 8 U.S.C. § 1252(d)(1).

14

## I.

"A court may review a final order of removal against an alien only if 'the alien has exhausted all administrative remedies available to the alien as of right.'" *Etienne v. Lynch*, 813 F.3d 135, 138 (4th Cir. 2015) (quoting § 1252(d)(1)). "We apply this exhaustion requirement not only to 'final order[s] of removal' globally, but also to particular claims specifically." *Shaw v. Sessions*, 898 F.3d 448, 456 (4th Cir. 2018). "Thus, if an alien could have raised an argument before the [BIA], but didn't, we do not have the authority to consider the argument in the first instance." *Id.*; *see also Massis v. Mukasey*, 549 F.3d 631, 638 (4th Cir. 2008) ("We have previously interpreted [§ 1252(d)(1)] as a jurisdictional bar.").

## II.

To satisfy this exhaustion requirement, Canales must have raised each issue before the Agency. 8 U.S.C. § 1252(d)(1); *see also Massis*, 549 F.3d at 638 ("[A]n alien's failure to dispute an issue on appeal to the BIA constitutes a failure to exhaust administrative remedies that bars judicial review.").

In his briefs before the IJ and the BIA, Canales contended that his proposed social group of "merchants in the formal Honduran economy" qualified as a "particular social group" eligible for asylum under *Acosta*.[1] In his Pre-Hearing Brief to the IJ, Canales argued

---

[1] Under 8 U.S.C. § 1101(a)(42)(A), asylum may be granted when the petitioner is unable to return to his or her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social

15

that "[c]onsistent with the BIA's *Acosta* decision, *merchants in the formal Honduran economy* are a cognizable [particular social group]" because they "are a discrete group with a shared characteristic: firm devotion to economic autonomy and freedom"—a characteristic that, according to Canales, is "immutable." A.R. 641. And in his Notice of Appeal to the BIA, Canales similarly contended that he had demonstrated before the IJ "by a preponderance of the evidence that he is eligible for asylum" because he "experienced persecution . . . because of his membership in a particular social group[.]" A.R. 59; *see also* A.R. 15 (contending in additional briefing to the BIA that he had "provided convincing substantial evidence that . . . economic activity is firmly within the universe of U.S. refugee protections and emphatically *not* excluded from *Acosta*'s flexible case-by-case approach"). Canales' central contention before the Agency can be summarized as follows: merchants in the formal Honduran economy fulfill *Acosta*'s "particular social group" requirements.

Yet in his Opening Brief before this Court, Canales changed his approach, arguing instead that *Acosta* was incorrect because it ran counter to Supreme Court precedent—in particular, *Hobby Lobby* and *Masterpiece Cakeshop*—requiring a government agency to

---

group, or political opinion[.]" Although the Immigration and Nationality Act (the "INA") does not define "particular social group," this Court has long deferred to the BIA's interpretation set forth in *Matter of Acosta*, which provides that to qualify as a "particular social group," a group's members (1) must share "common, immutable characteristic[s]" that (2) give the group "social visibility" and that (3) define the group with sufficient particularity to have "well-defined boundaries," i.e., "constitute[] a 'discrete class of persons.'" *Crespin-Valladares v. Holder*, 632 F.3d 117, 124–26 (4th Cir. 2011) (citing *Matter of Acosta*, 19 I. & N. Dec. at 233).

In his Pre-Hearing Brief, Canales contended that in addition to sharing a common, immutable characteristic, the proposed group was also "visible" and was delimited because the group included only merchants who had "compli[ed] with government registration and revenue statutes." A.R. 650.

remain neutral with respect to what may be considered fundamental to a merchant's individual identity or conscience. Specifically, Canales took issue with the BIA's conclusion that an individual's choice of livelihood is not so fundamental to his or her identity that it can constitute an immutable characteristic. But Canales contended that because a government agency must remain neutral on such matters, the BIA could not have adjudicated "the fundamentality of merchant status to [an asylum] applicant's own individual identity or conscience." Opening Br. at 25. In turn, Canales argued, the requirement of government neutrality set forth by Supreme Court precedent necessitated a "modification of *Acosta*," Reply Br. at 10, which has required application of "a non-neutral policy against merchants on what is or is not fundamental to a merchant's individual identity or conscience." Opening Br. at 25. That is, "[t]he Agency's *Acosta*[-based] non-neutrality on merchant matters of conscience should not stand." Opening Br. at 26.

In placing Canales' arguments before the Agency and this Court side-by-side, it is evident that he has fundamentally changed the legal basis for his challenge in this Court from what he argued in the Agency. Before the Agency, Canales argued that his proposed social group fit within the requirements set forth by *Acosta*. But before this Court, he has argued that *Acosta* is invalid. In my view, he has failed to exhaust this latter argument as it was never presented until briefing in this Court and it is not connected to the argument made below. Canales has not simply expanded the arguments he is making for why his identified social group satisfies *Acosta*, he has directed his challenge at an entirely different

17

mark—the validity of *Acosta* itself. That threshold question has no bearing on the preserved issue of how to apply *Acosta*.[2]

This Court's precedent supports this view. For example, in *Shaw*, the petitioner—who had been ordered removed because of his conviction for a controlled substance offense—argued before the BIA that the IJ improperly considered his indictment in contravention of an INA implementing regulation that, according to the petitioner, prohibited the use of indictments as evidence in removal proceedings. But at oral argument, the petitioner raised a new theory regarding why the petition should be granted: "that DHS could not carry its burden to demonstrate his removability because the indictment in the administrative record . . . was not the indictment to which he pleaded guilty." 898 F.3d at

---

[2] To this point, I would also observe that Canales' reliance on *Ramirez v. Sessions*, 887 F.3d 693 (4th Cir. 2018), is misplaced. There, the government argued that this Court was barred from reviewing certain "more specific" points set forth by the petitioner regarding how and why obstruction of justice did not constitute a crime of moral turpitude because the petitioner had failed to make these points before the BIA. *Id.* at 700. The government similarly argued that the petitioner's "citing [of] certain cases for the first time on appeal" prevented this Court from considering those cases. *Id.* But the Court rejected those arguments, concluding there was no basis "for applying the exhaustion requirement at this level of granularity" because it would "strip appellate counsel's ability to bolster existing arguments" and "limit the universe of available case law and precedent to those already cited below." *Id.* Rather, this Court observed that § 1252(d) prohibits "the consideration of bases for relief that were not raised below, and of general issues that were not raised below," but not consideration of "specific, subsidiary legal arguments, or arguments by extension, that were not made below." *Id.* at 700.

*Ramirez* does not apply to this case, in which Canales has set forth an entirely new legal theory, rather than expanding on or refining an existing one. Thus, his argument concerning *Acosta*'s conflict with Supreme Court precedent cannot be viewed as an "argument[] by extension" or a "subsidiary legal argument[]," which *Ramirez* would permit us to review. Similarly, his first-time citation to Supreme Court precedent cannot be viewed as "bolster[ing] existing arguments." *Id.*

18

456. The Court rejected this argument, noting that he had "*never* argued before the [Agency] that there was any defect in the conspiracy indictment, but only that *all* indictments were impermissible evidence." *Id.*[3] Given that the petitioner had presented an entirely different legal theory on appeal, he had failed to exhaust it. Similarly, in *Velasquez v. Sessions*, 866 F.3d 188, 197 (4th Cir. 2017), this Court observed that it potentially lacked jurisdiction over a petitioner's asylum claim because on appeal she had attempted to reframe her persecution as part of a larger scheme orchestrated by the MS-13 gang, rather than on the basis of a familial conflict with one individual, as originally contended. Furthermore, "[n]one of [the petitioner's] arguments to the IJ or the Board asserted that she was being persecuted by a gang." *Id.*

As in the foregoing examples, Canales asserts an entirely new legal theory on appeal, contending before the Agency that *Acosta* governed his asylum claim and that he met its requirements. But upon rejection of his *Acosta*-based claim, he now argues in this Court that *Acosta* is invalid. Canales never presented such a theory to the Agency. Thus, the reasoning of *Shaw* and *Velasquez* should apply with equal force here to conclude Canales failed to exhaust his claim.[4]

---

[3] Although *Shaw* also observed that the petitioner had failed to raise this argument in his brief before the Court, it recognized that "[t]o fail to raise a legal theory before the Board is to abandon that theory." 898 F.3d at 456.

[4] There are of course exceptions to § 1252(d)'s jurisdictional bar, but those are situations in which the petitioner has set forth the gist of his or her argument before the Agency such that it has had an opportunity to consider it. For example, this Court has previously found that even when an alien fails to raise a claim in his or her brief to the BIA, raising the issue in other ways—such as through the notice of appeal to the BIA—and/or the BIA's consideration of the issue proves sufficient for this Court to exercise jurisdiction

19

Exercising jurisdiction under these circumstances undermines the "twin purposes" of the exhaustion requirement: "protecting administrative agency authority and promoting judicial efficiency." *Kurfees v. INS*, 275 F.3d 332, 336 (4th Cir. 2001). "Both objectives are served when . . . the BIA has exercised its authority by issuing a conclusive ruling on a particular issue in the petitioner's agency proceedings and the Court knows the agency's final adjudication of the issue in the petitioner's case." *Cabrera v. Barr*, 930 F.3d 627, 633 (4th Cir. 2019). Here, because the BIA did not address this particular argument, it has not had the opportunity to exercise its authority or expertise on this matter, which would have been especially welcome given the importance of *Acosta* in determining asylum eligibility. As Canales observed in his Appeal Brief to the BIA, *Acosta* is a "keystone of modern asylum law." A.R. 37. Thus, passing on the viability of *Acosta* without the BIA's input has both deprived this Court of the BIA's expertise in this area and, by requiring this Court to review this argument from scratch, undermined judicial efficiency. Thus, I would find that § 1252(d) bars our review of Canales' argument.

### III.

For the reasons set forth above, I would dismiss Canales' argument concerning the Agency's purportedly non-neutral stance towards merchant identity and conscience for failure to exhaust. I concur in the majority's opinion in all other respects.

---

over the issue. *E.g.*, *Lizama v. Holder*, 629 F.3d 440, 448–49 (4th Cir. 2011). But this is not such a case, because Canales failed to raise this argument concerning the viability of *Acosta* before the BIA, and the BIA did not consider it.