UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-1417

FREDIS ALDAIR ARGUETA ROMERO,

       Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

       Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Submitted: March 11, 2022                      Decided: March 29, 2022

Before WILKINSON, KING, and QUATTLEBAUM, Circuit Judges.

Petition denied by unpublished per curiam opinion.

**ON BRIEF:** Benjamin J. Osorio, MURRAY OSORIO PLLC, Fairfax, Virginia, for Petitioner. Jeffrey Bossert Clark, Acting Assistant Attorney General, Brian M. Boynton, Acting Assistant Attorney General, Sabatino F. Leo, Assistant Director, Greg D. Mack, Senior Litigation Counsel, Corey L. Farrell, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Fredis Argueta Romero challenges the denial of his application for asylum based on the Board of Immigration Appeals' holding that former MS-13 gang members who left the gang without permission and Salvadoran males with MS-13 tattoos did not constitute cognizable particular social groups under the Immigration and Nationality Act. For the following reasons, we find his challenge unpersuasive and deny the petition.

I.

Romero is a native of El Salvador who unlawfully entered the United States in 2013 at the age of fourteen. Following Romero's arrest in Washington, D.C., in 2017 for a criminal charge (which was ultimately dismissed), the Department of Homeland Security (DHS) issued a Notice to Appear and initiated removal proceedings because Romero was "an alien present in the United States without being admitted or paroled" in violation of 8 U.S.C. § 1182(a)(6)(A)(i). Romero conceded removability but applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

At a hearing before an Immigration Judge (IJ), Romero testified that in El Salvador at the age of twelve or thirteen, he was forced to join the MS-13 gang and to get gang-related tattoos. He testified that he left the gang without permission about a year later to avoid being forced to harm or kill anyone. According to Romero, MS-13 targets and kills people who leave the gang without permission and their family members. Romero presented testimony and documentary evidence that some members of his family had been killed by gang violence in El Salvador and that he would be likewise targeted if he returned to the country. Accordingly, Romero sought asylum on the grounds that he was persecuted

2

on account of his membership in a particular social group, namely "former MS-13 gang members who left the gang without permission" or "Salvadoran males with MS-13 tattoos."

The IJ granted Romero's application for asylum and reserved decision on his withholding of removal and CAT claims. The IJ found all witnesses credible and held that Romero established a well-founded fear of persecution based on the evidence. The IJ also held that both of Romero's proposed particular social groups were legally cognizable, that Romero had established a nexus between the groups and his persecution, and that the El Salvador government was unwilling or unable to control the persecutors.

A three-member panel of the Board of Immigration Appeals (BIA) reversed, finding neither of Romero's proposed particular social groups legally cognizable. It held that the proposed group "former MS-13 gang members who left the gang without permission" lacked particularity because it was too broad and diffuse, and there also was insufficient evidence that Salvadorans viewed it as socially distinct. The alternative proposed group "Salvadoran males with MS-13 tattoos" lacked immutability because tattoos were not fundamental to identity or conscience nor beyond Romero's power to change.

The BIA remanded for the IJ to consider Romero's CAT claim. On February 14, 2020, the IJ ordered Romero removed but granted his application for deferral under the CAT, a determination which the DHS does not appeal. Romero petitioned this court for review of the BIA's denial of his asylum application on February 20, 2020. The DHS moved to dismiss that appeal because Romero's removal order was not yet final, which

this court granted. After the removal order became final, on April 10, 2020, Romero filed a second petition for review of his asylum denial, which is now before us.[1]

Where, as here, the BIA issued its own decision, we review only that decision. *Martinez v. Holder*, 740 F.3d 902, 908 (4th Cir. 2014). We uphold the BIA's denial of asylum unless it is "manifestly contrary to the law and an abuse of discretion." *Temu v. Holder*, 740 F.3d 887, 892 (4th Cir. 2014); 8 U.S.C. § 1252(b)(4)(D). In making that determination, we review legal conclusions de novo and treat the agency's underlying factual findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nolasco v. Garland*, 7 F.4th 180, 186 (4th Cir. 2021) (quoting 8 U.S.C. § 1252(b)(4)(B)).

II.

The Immigration and Nationality Act (INA) authorizes the Secretary of Homeland Security or the Attorney General, at his discretion, to grant asylum to any "refugee." 8 U.S.C. § 1158(b)(1)(A). The INA defines "refugee" to include "a person who is outside any country of such person's nationality" and "is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). "The

---

[1] In an earlier order dated February 15, 2022, the court dismissed this appeal on jurisdictional grounds. We now grant Romero's motion for reconsideration. We conclude that we do have jurisdiction, and for the reasons set forth herein we deny the petition on its merits.

burden of proof is on the applicant to establish that the applicant is a refugee" within the meaning of that section. *Id.* § 1158(b)(1)(B).

This case revolves around the term "particular social group." Since the INA does not define it, we "defer to the BIA's reasonable interpretation of the term." *Lizama v. Holder*, 629 F.3d 440, 446–67 (4th Cir. 2011) (citing *Hui Zheng v. Holder*, 562 F.3d 647, 654 (4th Cir. 2009); *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984)). As interpreted by the BIA, a "particular social group" must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014).

The BIA did not abuse its discretion or act manifestly contrary to law when it concluded that neither of Romero's proposed particular social groups satisfies all three criteria. Romero's first proposed group, "former MS-13 gang members who left the gang without permission," fails on the social distinction prong.[2] And his second proposed group, "Salvadoran males with MS-13 tattoos," lacks immutability.

A.

To be socially distinct, a group "must be perceived as a group by society." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 240. This criterion "refers to social recognition," and it "considers whether those with a common immutable characteristic are set apart, or distinct, from other persons within the society in some significant way." *Id.* at 238, 240. The group

---

[2] The BIA also found that this proposed group lacked particularity. Because we find that the group fails on the social distinction prong, we need not reach the particularity inquiry.

5

must be viewed as socially distinct "by society as a whole, not solely by the group's alleged persecutors." *Nolasco*, 7 F.4th at 187. Furthermore, it is not dispositive how the applicant or group members see themselves, as "other people in the particular society" must also perceive them "as a sufficiently distinct group." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 238. The applicant must present "evidence that society in general"—not a small subset—"commonly considers persons sharing the particular characteristic to be a group." *Nolasco*, 7 F.4th at 188.

The BIA concluded that Romero's proposed social group, former members of MS-13 who left the gang without permission, was not socially distinct in El Salvador. "Whether Salvadoran society views former MS-13 members . . . as socially distinct is a question of fact." *Nolasco*, 7 F.4th at 189. As such we are bound to treat the agency's determination as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Because the record evidence does not compel a contrary conclusion, we uphold the BIA's determination that Salvadorans do not perceive former members of MS-13 who left the gang without permission as sufficiently distinct.

*Nolasco* carries considerable force here. In that case, we found that a similar record did "not compel a finding that Salvadoran society views former MS-13 members or former MS-13 members who left for moral reasons as socially distinct." 7 F.4th at 190. Romero's proposed social group, "former members of MS-13 who left the gang without permission," is nearly identical to one that *Nolasco* very recently determined lacks social distinction in El Salvador. *See id.* While the social distinction prong requires a "case-by-case evidentiary inquiry," *see Amaya v. Rosen*, 986 F.3d 424, 434 (4th Cir. 2021) (citation omitted)—which

6

the BIA explicitly undertook here, *see* A.R. 12—we find it telling that numerous other courts have likewise found Salvadoran society does not perceive former gang members as a socially distinct group. *See, e.g.*, *Quintanilla-Mejia v. Garland*, 3 F.4th 569, 590–91 (2d Cir. 2021); *Reyes v. Lynch*, 842 F.3d 1125, 1138 (9th Cir. 2016); *Zaldana Menijar v. Lynch*, 812 F.3d 491, 499 (6th Cir. 2015); *Matter of W-G-R-*, 26 I. & N. Dec. 208, 222 (B.I.A. 2014).

Romero attempts to distinguish his proposed social group from *Nolasco* in two ways, neither of which is persuasive. First, he contends that he provided more evidence than the applicant in *Nolasco* that former MS-13 members face particularized harm in El Salvador. This does not appear to be the case. Romero submitted evidence of societal and employment discrimination, rehabilitation programs for former gang members, and news articles discussing former gang members in El Salvador. So too did the petitioner in *Nolasco*. *See* 7 F.4th at 189–90 (describing evidence of rehabilitation programs for, articles about, and societal discrimination against former gang members). Like *Nolasco*, Romero's "evidence does not meaningfully distinguish between former members of MS-13 and active gang members." *Id.* at 189. Much of the evidence concerns violence, stigma, or discrimination, for instance, based on an individual's gang tattoos—but those risks apply equally to both active and former members who have the tattoos. Moreover, evidence that Romero faces a unique risk of harm from his former gang is largely unhelpful, since "group recognition must be determined by the perception of society as a whole, rather than 'solely by the perception of the applicant's persecutors.'" *Id.* (quoting *Matter of W-G-R-*, 26 I. & N. Dec. at 218).

This case is therefore unlike *Oliva v. Lynch*, 807 F.3d 53, 61 (4th Cir. 2015), in which we remanded for the BIA to consider the totality of the evidence of social distinction for a similar proposed group. Here, the BIA adequately considered all this record evidence and concluded that the proposed group was not socially distinct in El Salvador. *See* A.R. 12 ("We have considered the evidence of violence and employment discrimination on which the Immigration Judge relied and conclude that it is insufficient to establish that 'former MS-13 gang members who left the gang without permission' is a socially distinct group."). The evidence does not compel a contrary finding, and so we uphold the BIA's determination.

Second, Romero argues that *Nolasco* is inapposite because the BIA should have deferred to the IJ's original finding that the proposed group is socially distinct. This contention is unconvincing. The BIA's decision correctly stated that it was reviewing the IJ's "findings of fact, including findings regarding witness credibility and what is likely to happen to the respondent, under a 'clearly erroneous' standard" and "all other issues, including questions of law, discretion, and judgment, under a de novo standard." *Id.* (quoting 8 C.F.R. § 1003.1(d)(3)(i)-(ii)). Since the BIA "cited the correct standards of review in its opinion," we "presume that the correct standard of review was applied absent clear evidence to the contrary." *Amin v. Sessions*, 716 F. App'x 206, 207–08 (4th Cir. 2018) (citing *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926); *Pilica v. Ashcroft*, 388 F.3d 941, 949 (6th Cir. 2004)). The BIA's decision has given us no reason to believe that it was not reviewing the IJ's underlying factual determinations for clear error and reviewing the ultimate determinations arising from that evidence de novo. And in light of *Nolasco*,

we conclude that substantial evidence supports the BIA's determination that the IJ clearly erred when it found that Salvadoran society perceives former MS-13 members as socially distinct.

B.

Romero next contends that the BIA erred in concluding that his alternative proposed social group, "Salvadoran males with MS-13 tattoos," lacked immutability. Whether or not a proposed group contains an immutable characteristic is a question of law that we review de novo. *Martinez*, 740 F.3d at 909. To satisfy the immutability criterion, "members of a particular social group must share a characteristic that they 'either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.'" *Id.* at 910–11 (quoting *Zelaya v. Holder*, 668 F.3d 159, 165 (4th Cir. 2012)). "The defining characteristic can be an innate characteristic or a shared past experience." *Matter of W-G-R-*, 26 I. & N. Dec. at 212–13. We have previously said that kinship ties, for example, satisfy the immutability criterion because they are "innate and unchangeable." *Crespin-Valladares v. Holder*, 632 F.3d 117, 124 (4th Cir. 2011). On the other hand, characteristics such as membership in an organization of taxi drivers or refusal to participate in guerrilla-sponsored work stoppages are not immutable because members could avoid threats "by either changing jobs or by cooperating with the stoppage." *Canales-Rivera v. Barr*, 948 F.3d 649, 657 (4th Cir. 2020) (citing *Matter of Acosta*, 19 I. & N. Dec. 211, 212 (B.I.A. 1985)).

Romero concedes that his tattoos are not fundamental to his identity or conscience. We conclude that the tattoos are also not beyond his power to change. Painful or expensive

9

as the process may be, it is undisputed that tattoos may be removed by medical procedure. *See, e.g.*, A.R. 335. Indeed, Romero testified that he desires to have his tattoos removed with laser treatment. *See* A.R. 227–28. As common sense dictates, removable tattoos are not innate or unchangeable. *See Castellano-Chacon v. I.N.S.*, 341 F.3d 533, 549 n.9 (6th Cir. 2003), *modified on other grounds by Almuhtaseb v. Gonzales*, 453 F.3d 743 (6th Cir. 2006); *Cole v. Holder*, 659 F.3d 762, 787 (9th Cir. 2011) (Callahan, J., dissenting) ("[T]here seems to be no disagreement that tattoos are removable, even if this process may entail some pain.").

Our conclusion in *Temu v. Holder*, 740 F.3d 887, 897 (4th Cir. 2014), is not to the contrary. There, we found that a mental illness was an immutable characteristic despite the availability of medication. But that determination was premised on the fact that the applicant "suffers from an *incurable* mental illness," so it was not relevant that "there exists medication that can help him control the illness," for "the underlying . . . disorder will never change." *Id.* (emphasis added). The same cannot be said for tattoos: their ink is not incurable. It can be not only covered up, but fully erased.

The presence of tattoos on one's body is indisputably subject to change, and as such a group defined on their presence cannot satisfy the immutability requirement.

III.

The BIA determined, and we agree, that Romero has failed to establish his membership in an immutable, socially distinct, and particular social group. We thus deny Romero's petition for review.

*DENIED*

10