**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2866
_____

HENRY OSVALDO MAZARIEGO-CORADO,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. 205-980-547)
Immigration Judge: R.K. Malloy

_____

Submitted Under Third Circuit L.A.R. 34.1(a):
September 23, 2022

_____

Before: CHAGARES, *Chief Judge*, McKEE and PORTER,
*Circuit Judges*.

(Filed: October 4, 2022)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

PORTER, *Circuit Judge.*

Henry Osvaldo Mazariego-Corado was kidnapped by MS-13, beaten, and held for ransom when he was in El Salvador. A year later, he entered the United States illegally. He was placed in removal proceedings. To avoid removal, he requested asylum and withholding of removal under the Immigration and Naturalization Act ("INA"), and protection from removal under the Convention Against Torture. An immigration judge ordered him removed to El Salvador, and the Board of Immigration Appeals affirmed. Mazariego-Corado petitions for review. But the agency followed the law and its findings of fact are supported by the administrative record, so we will deny his petition for review.

## I

### A[1]

Mazariego-Corado is a citizen and native of El Salvador. After graduating high school, Mazariego-Corado began attending the University of El Salvador in Santa Ana, studying chemistry and pharmacy. To make ends meet, he and a classmate took a side job delivering dairy products to local stores in Santa Ana.

To deliver the dairy products, Mazariego-Corado had to drive through parts of Santa Ana controlled by MS-13, a violent street gang. He ran into trouble quickly. Within a week, MS-13 members stopped his delivery vehicle and demanded "rent" from him and

---

[1] Mazariego-Corado testified credibly and corroborated his account, so "we accept his recitation of the facts as given in his affidavits and testimony." *Lukwago v. Ashcroft*, 329 F.3d 157, 164 (3d Cir. 2003).

2

his classmate. Fearing the gang, Mazariego-Corado and his classmate agreed to pay the gang 180 dollars then, and 300 dollars every month.

Mazariego-Corado, a practicing Catholic, was wearing a rosary around his neck that day. MS-13 gang members questioned him about the rosary, suspecting Mazariego-Corado could belong to a rival gang that "makes use of the rosary." A.R. 170. But because Mazariego-Corado agreed to pay them, MS-13 "decided not to make an issue about the rosary." A.R. 170.

Soon enough, Mazariego-Corado realized he would be unable to meet MS-13's extortionate demands on his meager income. He and his classmate agreed to quit their delivery jobs, hoping that MS-13 would forget about their "rent" once they quit.

MS-13 remembered. Soon after he quit, Mazariego-Corado was walking home from class when two police officers kidnapped him and drove him to an abandoned building. MS-13 members were waiting for him there. They demanded five thousand dollars in ransom from his family and punched him "over and over again." A.R. 845. They also tore his rosary to pieces and said that "religion cannot defend you from us." A.R. 174.

Mazariego-Corado's mother paid the ransom by borrowing money from her sister. After receiving the payment, MS-13 released Mazariego-Corado by tossing him out of a car onto a cobblestone street. A passerby drove him to a medical clinic, where he received treatment. His mother picked him up there and drove him to her home in Garita Palmera, a three-hour bus ride away from Santa Ana.

3

Back in Garita Palmera, Mazariego-Corado was "only able to earn about $8 per day doing odd jobs." A.R. 848. A year later, to escape El Salvador's gang violence and lack of job opportunities, Mazariego-Corado hired a "coyote"—a smuggler—and crossed the U.S. border.

## B

The Department of Homeland Security placed Mazariego-Corado in removal proceedings. Mazariego-Corado admitted he was removable based on his unlawful entry into the United States. He sought asylum and withholding of removal under the INA, and protection under the Convention Against Torture.

The Immigration Judge ("IJ") assigned to his removal proceeding denied all relief The IJ first concluded that Mazariego-Corado was ineligible for asylum. Asylum is a discretionary form of relief available to a "refugee." 8 U.S.C. § 1158(b)(1)(A). To qualify as a "refugee" under the INA, Mazariego-Corado must be unwilling to return to El Salvador "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Before the IJ, Mazariego-Corado argued among other things that he had a well-found fear of prosecution on account of his Catholic religion and "his membership in a particular social group comprised of Salvadorans who work in jobs that require frequent travel across gang-controlled zones." A.R. 316. But the IJ found that Mazariego-Corado's religion and job did not motivate the gang's crimes. Money did. The IJ also concluded that "Salvadorans who work in jobs that require frequent travel across

4

gang-controlled zones" did not qualify as a particular social group under governing Board precedent.

The IJ next concluded that Mazariego-Corado was not entitled to withholding of removal under the INA. Unlike asylum, withholding of removal under the INA is a mandatory form of relief. *See* 8 U.S.C. § 1231(b)(3)(A). But the standard for withholding of removal is more demanding. To establish entitlement to withholding of removal, Mazariego-Corado had to show a "clear probability of persecution" on account of a protected trait. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 443–44 (1987). Because the IJ had concluded that Mazariego-Corado did not meet the less stringent "well-founded fear" standard for asylum, the IJ also concluded he was also not entitled to withholding of removal under the INA.

The IJ finally concluded that Mazariego-Corado was not entitled to protection from removal under the Convention Against Torture. To be protected by the Convention Against Torture, Mazariego-Corado had "to establish that it is more likely than not that he . . . would be tortured if removed" to El Salvador. 8 C.F.R. § 1208.16(c)(2). The IJ found that Mazariego-Corado had not met this burden because he had been living safely in Garita Palmera for a year and has had no contact with MS-13 since he left El Salvador.

The IJ ordered Mazariego-Corado removed.

C

Mazariego-Corado appealed to the Board of Immigration Appeals. The Board affirmed the IJ's removal order and dismissed the appeal, adopting the IJ's decision and writing separately. The Board agreed with the IJ that Mazariego-Corado's religion and

5

occupation did not motivate MS-13's extortion, kidnapping, and abuse. Money did. The Board also agreed that the job-based group that Mazariego-Corado had proposed did not qualify as a particular social group under governing precedent. The Board finally sustained the IJ's finding that Mazariego-Corado was unlikely to be tortured if returned to El Salvador.

This petition for review followed.

II[2]

A

We begin by considering Mazariego-Corado's claims for asylum and withholding of removal under the INA. Because the Board reasonably concluded that Mazariego-Corado's Catholic faith did not motivate MS-13's crimes, and because Mazariego-Corado's proposed particular social group is not cognizable, we will deny Mazariego-Corado's petition for review of these claims.

1

Mazariego-Corado argues that MS-13's past persecution was motivated by his Catholic faith. To show that he has a well-founded fear "on account" of his Catholicism, Mazariego-Corado had to establish that his faith was "at least one central reason" motivating MS-13's persecution. 8 U.S.C. § 1158(b)(1)(B)(i); *see also Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684–87 (3d Cir. 2015) (applying the test to deny claim that

---

[2] We have jurisdiction under 8 U.S.C. § 1252(a). We review questions of law de novo, but the agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

6

MS-13 persecuted the applicant on account of sexual orientation). Under our precedent, "asylum may not be granted if a protected ground is only an incidental, tangential, or superficial reason for persecution of an asylum applicant." *Ndayshimiye v. Att'y Gen.*, 557 F.3d 124, 130 (3d Cir. 2009) (quotation marks omitted).[3] Whether Mazariego-Corado has shown past persecution on account of religion is a question of fact we review for "substantial evidence." *Mulanga v. Ashcroft*, 349 F.3d 123, 131 (3d Cir. 2003). Under that highly deferential standard, to prevail before us Mazariego-Corado must show "that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *INS v. Elias-Zacarias*, 502 U.S. 478, 483–84 (1992).

Mazariego-Corado has not met that demanding standard. The Board reasonably concluded that Mazariego-Corado's Catholicism did not motivate MS-13's extortion and kidnapping. As in *Gonzalez-Posadas*, "substantial evidence in the record—including [the alien's] own prior statements—can be understood to show that the [gang members] were interested in him for two reasons: he had money, and he was a potential recruit." *Gonzalez-Posadas*, 781 F.3d at 686.

The administrative record suggests that MS-13 terrorizes Catholics and non-Catholics alike for financial gain. According to Mazariego-Corado's testimony, MS-13 extorts "everybody and especially the people driving cars." A.R. 180. Country-conditions

---

[3] While this test derives from the asylum provisions of the INA, the "central reason" standard also governs withholding of removal claims. *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 685 n.6 (3d Cir. 2015).

evidence similarly suggests that MS-13 gang members "extort from small businesses, taxi drivers, homeowners—almost anyone passing through their neighbourhoods." A.R. 438 (The Economist, *Out of the Underworld*, Jan. 5, 2006). By contrast, Mazariego-Corado points to no record evidence showing that MS-13 has a pattern of persecuting Catholics on account of their faith.

This case is consistent with MS-13's general pattern of indiscriminate criminal activity. MS-13 subjected Mazariego-Corado's classmate and co-worker to the same extortionate demands even though he did not wear a rosary. And even though MS-13 knew Mazariego-Corado was Catholic when they first stopped him, MS-13 "didn't try to hurt [him] at that point, because [he] was paying the rent they demanded." A.R. 842. MS-13 kidnapped Mazariego-Corado only when he stopped paying and held him for ransom, suggesting that pecuniary gain, not Mazariego-Corado's Catholic faith, motivated MS-13's criminal activity.

MS-13, to be sure, destroyed Mazariego-Corado's rosary and made negative comments about his Catholic religion when they were holding him for ransom. But Mazariego-Corado testified that the gang's actions were motivated by their association of rosaries with a rival gang, not animus toward Catholics. Mazariego-Corado also testified that MS-13's negative comments about religion could have been motivated by their interest in recruiting him for the gang. On this record, we must accept the Board's finding that Mazariego-Corado's Catholic faith did not motivate MS-13's persecution. Money did. But MS-13's financially motivated "criminal acts do not constitute persecution on account of a protected characteristic." *Gonzalez-Posadas*, 781 F.3d at 685.

We next address whether Mazariego-Corado has shown a well-founded fear of persecution on account of his membership in the group of "Salvadorans who work in jobs that require frequent travel across gang-controlled zones." A.R. 316. He has not.

To show past persecution on account of membership in a particular social group, Mazariego-Corado "bore the burden of establishing the following elements: (1) a particular social group that is legally cognizable; (2) membership in that group; (3) a well-founded fear of persecution, which must be subjectively genuine and objectively reasonable; and (4) a nexus, or causal link, between the persecution and membership in the particular social group." *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 544 (3d Cir. 2018). We agree with the Board's conclusion that Mazariego-Corado's particular social group is not legally cognizable.[4]

To qualify as a particular social group, the group must be "composed of members who share a common immutable characteristic." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014). An immutable characteristic must be "beyond the power of an individual to change or . . . so fundamental to individual identity or conscience that it ought not be required to be changed." *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985).

---

[4] Because the proposed particular social group is not legally cognizable, we need not address the Board's finding that Mazariego-Corado's affiliation with the group has no nexus to MS-13's persecution. We also do not address whether Mazariego-Corado was a member of his proposed social group when he suffered past persecution, but we note that he quit his job *before* he was kidnapped and beaten by MS-13.

A group that includes everyone with a job that requires traveling through MS-13-controlled areas in El Salvador is not based on an immutable characteristic. Commuting and job-related driving patterns may change, and workers may generally quit their jobs (as Mazariego-Corado did after only a few months). While having to quit a job to avoid extortion and other criminal acts is unfortunate, "the internationally accepted concept of a refugee simply does not guarantee an individual a right to work in the job of his choice." *Id.* at 234. For that reason, other circuits have rejected similar proposed particular social groups based on general job occupations like "merchants" that carry an increased risk of exposure to economic exploitation and abuse. *See Canales-Rivera v. Barr*, 948 F.3d 649, 657–58 (4th Cir. 2020) (discussing caselaw). We find these cases persuasive and conclude that Mazariego-Corado's proposed group does not meet the Board's immutability requirement.

We also agree with the Board that Mazariego-Corado's group is too broad and ill-defined to qualify as a particular social group. "[A] proposed [particular social] group must 'be discrete and have definable boundaries'—not [be] 'amorphous, overbroad, diffuse, or subjective.'" *Guzman Orellana v. Att'y Gen.*, 956 F.3d 171, 179 (3d Cir. 2020) (quoting *M-E-V-G*, 26 I. & N. Dec. at 239). As Mazariego-Corado admits, the type of gang activity he suffered is "a general problem in the entire country." A.R. 182. Mazariego-Corado's proposed group could include nearly every worker in El Salvador, so it is insufficiently particular.

Because Mazariego-Corado's proposed group is not legally cognizable, Mazariego-Corado is ineligible for asylum or withholding of removal on account of his

10

membership in the group of "Salvadorans who work in jobs that require frequent travel across gang-controlled zones." Because this was the only remaining asylum claim raised before the agency and in the briefs before us, Mazariego-Corado has not shown eligibility for asylum or entitlement to withholding of removal.

B

Finally, we consider whether the Board erred in denying Mazariego-Corado's claim for protection under the Convention Against Torture. It did not. To get relief under the Convention Against Torturer, he had to show that he would more likely than not be tortured if removed to El Salvador. 8 C.F.R. § 1208.16(c)(2). The Board's prediction of future events is a factual finding. *See Kaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir. 2010). So we review its findings under the highly deferential substantial evidence standard. *See Galeas Figueroa v. Att'y Gen.*, 998 F.3d 77, 93 (3d Cir. 2021).

In this case, the Board made a reasonable predictive judgment. The Board examined the IJ's findings and concluded that Mazariego-Corado had not met his burden of showing he will likely be tortured. Mazariego-Corado agrees that MS-13 did not continue to threaten him when he moved from Santa Ana to Garita Palmera, and he does not dispute that he has had no contact with MS-13 since his kidnapping. Other countervailing evidence in the record may justify a different predictive judgment about the likelihood of future torture, but that judgment was for the Board to make. Substantial evidence supports the Board's determination, so we will uphold it.

\* \* \*

We will deny the petition for review.

11